# ROBERT LEE ORCUTT v. CENTURY BUILDING COMPANY and MISSISSIPPI VALLEY TRUST COMPANY, Appellants.

### Division One, July 14, 1908.

1. **NEGLIGENCE: General Allegation: Burden.** Where the petition charges general negligence, that plaintiff was a passenger on an elevator, that the elevator fell and he was injured, the burden is on defendant of disproving all negligence.

2. ——: ——: ——: **Instruction and Evidence.** And where the petition charges general negligence, that plaintiff was a passenger and was injured, but plaintiff went further and introduced evidence tending to establish specific acts of negligence which caused the injury, instructions hypothecated upon the facts so proven are not erroneous simply because, while undertaking to cover the entire case, they omit some facts necessary for the jury to find in order to justify the existence of these specific acts of negligence. Both by that evidence and those instructions plaintiff took upon himself a greater burden than the law imposes, and instead of being an error against defendant it was in its favor.

3. ——: **Instructions: Entire Case.** When all the instructions taken and read together cover the entire case as made by the pleadings, and require the jury to find all the facts essential to a recovery, they are not open to the objection that each one of them undertakes to cover the entire case but omits certain essential facts necessary to justify the jury to find for plaintiff.

4. ——: ——: **Assumption of fact.** When all the evidence in the case on both sides, without any contradiction, establishes an essential fact, it is not error to assume the existence of that fact in the instructions.

5. ——: ——: **Burden.** Where the petition charges general negligence, that plaintiff was a passenger on an elevator, that it fell and he was injured, it is not error to refuse an instruction for defendant declaring that the burden is on plaintiff throughout the case of proving the specific facts which caused the injury. The burden is on defendant, in such case, to show it was not negligent.

6. ——: **Evidence: Remoteness.** Testimony tending to show the condition the elevator was in for two years prior to the accident and on down to the date of the accident, was admissible.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel G. Taylor,* Judge.

AFFIRMED.

*Seddon & Holland* and *Collins & Chappell* for appellants.

(1) The court erred in giving instruction 1 at the instance of plaintiff. Mulderig v. Railroad, 116 Mo. App. 667; Allen v. Railroad, 183 Mo. 411. (2) The court erred in giving instruction 2 at the instance of plaintiff. Orcutt v. Century Building Co., 201 Mo. 424; Klebe v. Parker Distilling Co., 105 S. W. 1057; Rodan v. Railroad, 105 S. W. 1061; Turner v. Hoar, 114 Mo. 335. (3) The court erred in giving instruction 6 at the instance of plaintiff. Mulderig v. Railroad, 116 Mo. App. 667; Allen v. Railroad, 183 Mo. 411. (4) The court erred in refusing to give instruction B at the request of defendant. (5) The court erred in allowing witness Fitzhugh to testify, over the objection of defendants, that he had reported to engineer Pate about the shoes coming out of position some two years before the accident. (6) The court erred in refusing to give the peremptory instruction offered by the Mississippi Valley Trust Company at the close of all the testimony. Orcutt v. Century Building Co., 201 Mo. 424; Luckel v. Century Building Co., 177 Mo. 608.

*John A. Gilliam* and *Luther Ely Smith* for respondent.

(1) The law as declared by this court upon the first appeal of this case was the law upon the second trial in the court below. No error can be predicated upon this appeal by reason of an observance in that trial of the views expressed by this court in passing upon the very case theretofore before it. Orcutt v. Century Building Co., 201 Mo. 424. (2) Plaintiff.

after the determination of the former appeal herein and in accordance with the views then expressed by this court, filed an amended petition charging "the relationship of passenger and carrier, and a failure to safely carry, with charges of general negligence instead of detailed specific charges of negligence." Plaintiff having gone to trial upon said amended petition so filed to meet the views of this court in that regard, is entitled to the benefit of the doctrine of *res ipsa loquitur.* Instructions upon that theory were rightfully given by the court below. Orcutt v. Century Building Co., 201 Mo. 424; Rules 9, 11, 206 Mo., p. 3; Lemon v. Chanslor, 68 Mo. 340; Johnson v. Railroad, 173 Mo. 307; Dougherty v. Railroad, 9 Mo. App. 480; Rodan v. Railroad, 105 S. W. 1061; Furnish v. Railroad, 102 Mo. 438; Germain v. Railroad, 6 L. C. P. 172; Sweeney v. Railroad, 150 Mo. 397; Geissman v. Electric Co., 173 Mo. 666; Goldsmith v. Holland Bldg. Co., 182 Mo. 603. (3) Instruction 1 correctly declared the law to the jury. (4) The second amended petition is not in this case. It is an abandoned pleading. It was not offered in evidence, or preserved by any bill of exceptions, nor was any point made in regard to it at the trial. It is no part of this record and cannot properly be referred to on this appeal. Rules 9, 11, 206 Mo.; secs. 813, 817, R. S. 1899; Herman v. Glann, 129 Mo. 334; Hawkins v. Massie, 62 Mo. 553; Beattie Mfg. Co. v. Gerardi, 166 Mo. 153; Lane v. Choctaw, etc., Co. (Okl.), 91 Pac. 883; Lottman v. Barnett, 62 Mo. 159. (5) The record in regard to the Mississippi Valley Trust Company is substantially and for all practical purposes the same on this appeal as on the former appeal. If either defendant is liable, then the question of the liability of the Trust Company is *res adjudicata.* Rutledge v. Farr, 95 Mo. App. 265; Whitehead v. Railroad, 176 Mo. 475; Orcutt v. Century Bldg. Co., 8 L. R. A. (N. S.) 929; Carson v. Quinn, 105 S. W. 1091.

WOODSON, J.—Plaintiff instituted this suit to recover damages for personal injuries sustained by him through the alleged negligence of the defendants in permitting a freight elevator, in which he was riding, to fall. There was a trial before the court and jury, which resulted in a verdict and judgment for plaintiff and against both defendants for the sum of $13,150. After taking the proper preliminary steps, the defendants appealed the cause to this court.

The petition upon which the trial was had in substance alleged: That the Century Building in the city of St. Louis was owned by defendant Century Building Company, on and prior to May 30, 1902, and that defendant Mississippi Valley Trust Company for sometime prior thereto was and still is the trustee in two deeds of trust, the first to secure bonds amounting to $600,000, and the second to secure bonds amounting to $150,000. That by a written contract dated December, 1896, defendant Mississippi Valley Trust Company was by defendant Century Building Company appointed its attorney in fact to rent said Century Building and in its name to collect rents, and out of the rents so collected to pay all taxes and ground rent, semiannual interest on bonds and all expenses connected with the maintenance and repair of the building, and also to pay itself three and one-half per cent. commission on the amount collected; that on the 30th day of May, 1902, the Mississippi Valley Trust Company was in the control and management of said building under said contract; that on and prior to said date it was customary for persons taking freight out of said building, or taking it into said building, to place the freight on a certain freight elevator and also to ride with the freight on said elevator; that such persons were invariably allowed by defendant to use said elevator; that on said date while plaintiff was on said elevator in said capacity and was a passenger thereon,

the elevator fell from the seventh floor to the basement, causing serious injuries to plaintiff; that the fall of said elevator was the result of negligence on the part of defendants.

The answer was a general denial.

There was but little, if any, material conflict in the testimony of the witnesses for plaintiff and defendants.

The plaintiff's evidence tended to prove that the Century Building Company, a corporation of Missouri, was and at all times mentioned in the evidence continued to be the owner of the Century Building at the northwest corner of Olive and Ninth streets in the city of St. Louis, and that the building was opened for occupancy about February, 1897; and from the beginning a certain steam freight elevator was operated in said building on the west side of same, opening on an alley which formed the western boundary of the building, the elevator being located nearer to Olive than to Locust street.

On January —, 1896, the Century Building Company executed a deed of trust conveying to defendant Mississippi Valley Trust Company, as trustee, the Century Building and all the assets of the company, to secure an issue of bonds amounting to $600,000. On October 1, 1897, the Century Building Company executed to defendant Mississippi Valley Trust Company, as trustee, a second deed of trust upon the Century Building and all other assets of the company to secure the payment of an issue of bonds in the sum of $150,000. On December 10, 1896, the Century Building Company and the Mississippi Valley Trust Company entered into a contract of agency, whereby the Century Building Company appointed the Mississippi Valley Trust Company irrevocably its agents and attorney in fact: To rent for the Century Building Company and in its name the Century Building and

each and every part thereof; to collect all rents accruing to the Century Building Company from any portion of said building; and to make out of same the following payments and disbursements: First, to pay all taxes of every kind and character on said building or the ground upon which same is situated; second, to pay the ground rent; third, to pay the semiannual interest on said bonds; fourth, to pay all expenses with the maintenance, repairs and management of said building and operating expenses thereof; fifth, to pay all insurance covenanted by the Century Building Company in said deed of trust to be taken out on said premises; sixth, to pay over the balance of said rents to the Century Building Company after deducting from the rents as collected as compensation to said Mississippi Valley Trust Company for its service as attorney in fact and agent the sum of three and one-half per cent. on the amount collected in said rents of said building and property. It was further provided in and by said contract of agency that while the said matters were set out as "first," "second," etc., it was not intended thereby that the said Mississippi Valley Trust Company should be obliged to pay on account of said items in the order named, but on the contrary the said Trust Company was expressly given authority and right to use its discretion in the premises. It was further provided that the terms and conditions of the renting of the property or any part thereof, and also the amount to be expended for maintenance, repairs, management and operating the building should be at the discretion of said Mississippi Valley Trust Company. The agreement of agency and attorney in fact was made irrevocable and required to continue during the life of the bonds under the said deed of trust. And the Mississippi Valley Trust Company accepted said appointment as attorney in fact and agent, and agreed faithfully to perform its duties with respect

to same. The said agreement of agency and appointment of attorney in fact was duly executed by the Century Building Company. The Mississippi Valley Trust Company entered upon the execution of its contract of agency and employed the McCormick, Kilgen & Rule Real Estate Company as agents to look after renting the offices in the building. The McCormick, Kilgen & Rule Real Estate Company collected the rents, and looked after the repairs. The Mississippi Valley Trust Company had full charge and control of the Century Building and its elevators, and employees in charge thereof.

From the opening of the building in 1897 passengers were carried in the freight elevator in the Century Building. It was customary for the operator to carry passengers up and down on the freight elevator, down to the 30th of May, 1902. Plaintiff himself had frequently been carried on this same elevator. Baldwin, employed at McTague's restaurant, during a period of five years before the fall of this elevator, frequently saw passengers carried up and down on it. Fitzhugh, operator of this elevator during a period of three or four years up to May 30, 1902, always carried up or down those handling freight. Rupert Orcutt had frequently seen persons accompanying freight ascending and descending on this elevator prior to the accident. In moving people in and out of the Century Building it was the usual custom, when handling freight, to ride in the elevator therewith. Kinyon had ridden on the elevator before the accident. Martin McGrath had seen effects moved in and out of the Century Building ever since it was built, and himself had accompanied freight on this very elevator two or three hundred times. The witness Crutwell had had men ride up and down on this elevator and never knew of any objection being raised.

On the morning of May 30, 1902, plaintiff, then an employee of the Orcutt Storage, Moving and Packing Company, was engaged in moving effects, records and office fixtures of the Frisco Railroad Company, outgoing tenants, from the Century Building. About half-past eight the elevator came up to the seventh floor to receive freight. After it was loaded plaintiff got on the elevator; the bell at the eighth floor rang and the elevator was raised to that floor; and then it started to descend. After it had descended about a floor, there was a wobbling, shaking noise down below and the elevator shot down to the basement. The operator had reversed the car at eighth floor. Between the seventh and sixth floors the car listed, shook a little bit, and the operator could not stop the car, but it fell down to the bottom. There were about 2,600 pounds of freight, stationery, office fixtures and boxes on the car at the time it fell.

The car fell. One of the cables broke or was "chawed up." The pinion that transmits power from the engine proper to the winding drum broke, was split in two. The winding drum, to which the hoisting cables are fastened and on which they coil, was turned end for end, and the flange or perimeter of the winding drum was broken off. The bolts that held in place the pillow-cap, which in turn held in place the winding drum on the pillow block, were broken. One of these bolts presented a shiny, worn appearance, which might have happened in one or two trips, or more, probably longer time, perhaps a week or more. The sides of the maple ways and guides upon which the car ran were indented in places and scratched. The rod that operates the safety devices under the car was bent.

The elevator in question was an Eaton & Prince make, standard construction, both for engine and general style of car. The car was larger than usual for

this character of building, being eight by thirteen feet, and fastened or held in position at diagonal corners. The car was equipped with safety devices. A governor on top of the car was so geared that when the car descended at a speed in excess of its normal speed, the governor would operate upon a bar or rod connecting with a long transverse rod running diagonally across the bottom of the car and underneath it, thereby rotating this transverse rod (also called a "rocker shaft"), the effect of which was to throw instantly into the sides of the maple up-rights or guides two sharp dogs, or pieces of steel. These dogs being released were supposed to imbed themselves solidly into the sides of the maple guides and hold the car. These safety devices were the standard construction of safety devices upon elevators of this style at that time, the usual construction.

The city inspected the elevator at intervals of about three months. The last city inspection was on February 26, 1902. The elevator fell May 30, 1902. On these inspections by the City Deputy Inspector of Boilers, he found the cables, the ropes and all in "fair" condition—"Passable," "nothing bad enough to condemn." The city inspector never noticed the transverse rod under the elevator car, the rod that works the safety devices, before the fall of the elevator, and defendant's engineers testified that they never found it bent. Two other persons (Baldwin and Stolzenberg) had seen the rod bent before the fall, perhaps a month or so.

The night engineer had nothing to do with inspecting the machinery. The chief engineer and assistant engineer frequently saw the machinery operating this elevator. Sometimes as much as ten times a day. The witness Baldwin testified that a few days before the fall of the elevator he noticed a low, rattling noise

about the elevator; a few days before the fall Baldwin asked Pate why they didn't fix the elevator.

Defendants' chief engineer had been employed by defendants only two or three months when the elevator fell, and while he had had considerable experience as an engineer during a period of twenty years in St. Louis, he had been licensed as an engineer only twenty-two days prior to this catastrophe. The night engineer had been in the employ of defendants only thirty-two days when the elevator fell. The assistant engineer made no examination of the machinery on the morning of May 30, 1902, before the elevator fell. He had just come on duty.

A few days before May 30, the chief engineer and assistant engineer made an examination of this elevator and found nothing wrong. They used their hands, did not use wrenches. They tried the safety devices at that time with the hand. The condition of everything was ''good.''

Plaintiff suffered intense pain. Both legs were broken. He was taken unconscious to the City Hospital; remained there five days; was taken to St. John's Hospital; remained there four or five weeks, and was taken home. The right leg was amputated above the knee. The wound on the other leg never has healed. Dead bone still keeps coming out. Plaintiff's face and head are scarred up. He had numerous other injuries. The severity of the injuries is conceded.

In behalf of defendants the testimony tended to show that the night engineer was on duty from six o'clock in the evening until six o'clock in the morning; he had been there the night before the accident and left at six o'clock the morning of the accident; before leaving the morning of the accident, he looked at the machinery and found that everything was running well. The machinery was in good condition that morning.

The testimony further tended to show that a deputy city inspector had examined this elevator and machinery on the 26th of February, 1902, approximately three months before the accident, and approximately every three months for a period of two and one-half years; always found everything in good order and issued a certificate. The testimony in behalf of defendant further tended to show that Henry E. Tate, assistant engineer of the Century Building, and Oscar Malinda, engineer, had made an inspection of this elevator and all the parts thereof and of the machinery three or four days before this accident and had found everything in good order. The three engineers of the Century Building, together with the superintendent of construction of the Otis Elevator Company, who came down to look after the repair of same, made an examination of the elevator and machinery after the accident, and found no bolt that had a polished appearance. On the contrary, all the breaks they saw in the bolts and machinery were new, fresh breaks. The testimony of defendants also tended to show that the elevator in question was one of standard construction.

Over the objections and exceptions of defendants, the court gave the following instructions on behalf of the plaintiff:

"1. The jury are instructed that if they believe from the evidence that on and prior to May 30, 1902, the Century Building was located at the northwest corner of Ninth and Olive streets in the city of St. Louis, Missouri, and conducted and operated as an office building; and that a freight elevator was maintained and operated in said building for the use and convenience of incoming and outgoing tenants; and that on, and for a long time prior to, May 30, 1902, it was and had been the custom to carry persons who were handling furniture, goods, articles and effects

belonging to incoming and outgoing tenants upon said elevator; and that plaintiff on May 30, 1902, while handling and in charge of furniture and effects of an outgoing tenant of said building, entered said elevator for the purpose of being carried therein; and that plaintiff was exercising ordinary care; and that said building was at all of said times owned by the Century Building Company and was being operated and conducted by the Mississippi Valley Trust Company, pursuant to the terms of the agreement in writing between the Trust Company and the Building Company, bearing date December 18, 1896, and which has been read in evidence, and that, pursuant to the terms of said contract, said Trust Company was, at said times, in full control of said building and the management thereof, receiving all income, selecting, employing and paying all the servants, engineers and operators of said building, and, in its discretion, determining and making all repairs in said building; then it was the duty of both of said defendants, their agents and servants in charge of said elevator and the machinery operating the same, to use the highest practicable degree of care to carry plaintiff in said elevator safely, and also to use the highest practicable degree of care to keep said elevator and its hoistings and lowering apparatus, and the engines, boilers, and machinery and appurtenances used in connection therewith, in good repair; and if the jury believe from the evidence that on May 30, 1902, the aforesaid elevator or the machinery, or any part thereof, was out of repair, and that said defendants knew or by the exercise of the highest practicable degree of care and foresight could have known that the same were out of repair; and if they believe that, by reason of said elevator or machinery, or any part thereof, being so out of repair while plaintiff was riding on

said elevator, it gave away and fell and that plaintiff was injured by such fall, then the jury should find for the plaintiff, against both defendants.

"2. The jury are instructed that if you believe and find from the evidence that on or about the 30th day of May, 1902, the defendant Mississippi Valley Trust Company as agent of the Century Building was operating a freight elevator in the Century Building in the city of St. Louis, under the contract of December 18, 1896, in evidence, and at said time carried passengers thereon who were taking freight in and out of said building for tenants, and that plaintiff was such passenger and had taken passage upon said elevator in said building and that while he was so a passenger being carried upon the said elevator, operated by said defendant, as aforesaid, the said elevator fell from about the seventh story and suddenly dropped to the bottom of the elevator shaft in the basement of said building; and that plaintiff was himself exercising ordinary care, and that he was by such fall and dropping of the elevator car precipitated to the bottom of said elevator shaft, and injured thereby, then the law presumes that such injury to plaintiff was caused by defendant's negligence, and such facts, if proved by a preponderance of the evidence, make out a presumptive case for the plaintiff, and you should find a verdict for the plaintiff against both defendants; unless you further believe from the evidence that notwithstanding this presumption the defendants, at the time of the happening of the injury, in fact had then fully performed, or were then fully performing, their duty, as defined and stated in other instructions herein, toward plaintiff as such passenger; or that such injury to plaintiff, if any, did not occur because of any failure of the defendants in such respect.

"3. The jury are instructed that if they believe from the evidence that the Century Building Company

had made the Mississippi Valley Trust Company its agent under the contract of December 18, 1896, in evidence, and given it the care and management of the Century Building, and that said Mississippi Valley Trust Company was operating and managing said building under that contract, and made repairs therein at its discretion, then the Century Building Company was jointly responsible with the Mississippi Valley Trust Company for any injury that might arise from the negligent management of said building by said Mississippi Valley Trust Company and the jury are instructed that it is the duty of the person or persons operating an elevator, such as the elevator in question, in the carriage and transportation of passengers upon such elevator, to have, take and exercise the highest degree of care, reasonably practicable, for the personal safety and safe carriage of such passengers; and that this care should be used and exercised for the purpose of safely operating said elevator, in having said elevator, its operating machinery, safety devices, and all machinery and apparatus constituting a part of said elevator and said operating machinery maintained and kept in a reasonably good and safe condition, and for such purpose to take and exercise about the same the highest degree of care, reasonably practicable, in inspecting and keeping such elevator, its operating machinery, safety devices, and all machinery and apparatus constituting a part of said elevator and said operating machinery in good and reasonably safe working order and condition; and a failure to so do would be negligence; and if you believe from the evidence that the elevator operated by defendants on or about the 30th day of May, 1902, fell from about the seventh story of the Century Building in the city of St. Louis, while the plaintiff was a passenger on said elevator, and plaintiff was injured thereby, and that he was exercising ordinary care, you will find your verdict

in favor of the plaintiff, against both defendants, unless you further believe from the evidence that the defendants maintained and kept said elevator, its operating machinery, safety devices and all machinery and apparatus constituting a part of said elevator and said operating machinery, in a reasonably good and safe condition, and for such purpose took and exercised about the same the highest degree of care reasonably practicable in inspecting and keeping such elevator, its operating machinery, safety devices and all machinery and apparatus constituting a part of said elevator and said operating machinery in good and reasonably safe working order and condition.

"4. The jury are instructed that if they believe and find from the evidence that defendant Mississippi Valley Trust Company, under the contract of date December 18, 1896, in evidence, was managing the Century Building and operating the freight elevator therein and that plaintiff became a passenger thereon, as set out in other instructions; and that plaintiff was exercising ordinary care; and that while plaintiff was a passenger in said elevator it fell without his fault, and he was injured thereby, the burden is not upon the plaintiff to show what particular thing caused the elevator to fall, but the burden is upon the defendants to overcome the presumption that the fall of said elevator occurred through their negligence, and unless the jury believe from the evidence, that the fall of said elevator was without their fault, you should find for the plaintiff, against both defendants.

"5. The jury are instructed that if they find and believe from the evidence that the defendant Mississippi Valley Trust Company, as agent of the Century Building Company, had the care and management of the elevator in question on May 30, 1902, and that the Mississippi Valley Trust Company was negligent

214 Sup.—4

in the care and management of the elevator in question, and that as a result of said negligence, plaintiff received injuries, then they should find for plaintiff against both defendants in such sum as they believe from the evidence will compensate him for the damages which he has sustained by reason of his said injuries. And in determining said damages, they may take into consideration the expense which they believe from the evidence he has paid, incurred or become liable for, medical and surgical services, if any, nursing and hospital charges, if any; artificial leg, and medicine and surgical appliances, if any; the loss of earnings that he has sustained, if any; the pain and suffering which he has endured, if any; and which the jury believe from the evidence he will be reasonably certain to sustain hereafter, if any; the impairment that he has sustained of his earning power, if any; and which he will be reasonably certain to sustain hereafter, if any; the amputation of his right leg and the injury and impairment to his left leg; and the injury to his body and spine, heart and nervous system, head and face, if the jury believe from the evidence that plaintiff has sustained such injuries, or any of them.''

And the court gave a number of instructions in behalf of defendants, none of which are complained of, but refused to give the following asked by the defendants, to-wit:

''B. The court instructs the jury that the burden of proving that the elevator in question fell on account of negligence on the part of defendants is throughout the case upon the plaintiff, and if you find that the plaintiff has failed to prove, by a preponderance or greater weight of the evidence, that the fall of said elevator was due to negligence on the part of defendants, then and in that case your verdict must be for the defendants.''

I. This case was here on a former appeal, and is reported in the 201 Mo. 424. The former trial resulted in a judgment for defendants, which was, by this court, reversed and remanded for a new trial. Upon a retrial, the judgment was for the plaintiff for the sum of $13,150. Upon the former appeal the law and facts of the case were most exhaustively considered, which leave but little to be said by us upon this appeal.

When the cause was remanded to the circuit court for a new trial, the plaintiff filed an amended petition, charging general negligence only; and, upon the retrial, introduced evidence tending to prove not only that the defendants were operating the elevator and were common carriers of passengers; that he was a passenger upon that elevator; the accident and the attending circumstances; and his injuries, which would have been sufficient to have made out a prima-facie case, entitling him to go to the jury; but he went further, and introduced evidence tending to show the specific acts of negligence which caused the injury, and asked instructions hypothecated upon the facts so proven.

Appellants present many objections to the instructions given for respondent, chiefly because, it is contended, that each of them undertakes to cover the entire case, but erroneously omits some essential fact which was necessary for the jury to find in order to justify a finding and verdict for the plaintiff.

Conceding, for the sake of argument, without deciding it, that such contention would be well-founded in a case where the law requires the specific acts of negligence to be stated in the petition, yet that contention would be untenable in a case like this, where only general negligence is required to be charged, for the reason that it was not necessary for the plaintiff to hypothecate his instructions upon any of the spe-

cific acts of negligence which the evidence showed caused the injury. By so doing he took upon himself additional burdens which was wholly unnecessary, and thereby required the jury to find affirmatively that those acts caused the injury before they could find for him. Instead of that being an error against the appellants, it was in their favor, for the reason that under the law respondent was entitled to go to the jury upon the presumption of negligence, which would have cast the burden of disproving all negligence upon appellants; but the instructions for respondent as given shifted the burden of proof from appellants to him, by requiring him to prove the facts stated in the instructions before he could recover, while under the law applicable to this class of cases he would have been entitled to recover without requiring the jury to find any of the facts to be true which are stated in the instructions.

We are, therefore, of the opinion, that the instructions given for respondent were more favorable to appellants than they were entitled to under the law, and that the court did not err in giving them.

But independent of the foregoing suggestions, the instructions correctly declare the law and are not vulnerable to the objections urged against them. There is no complaint that the evidence does not tend to prove all of the facts stated in all of the instructions given for respondent, or that all of the instructions when read together do not cover the entire case as presented by the pleadings and evidence, or that they do not correctly declare the law of the case as it was enunciated by this court when the case was here on the former appeal.

When all of the instructions are taken and read together they cover the entire case as made by the pleadings, and require the jury to find all of the facts which are essential to a recovery, then they are not

open to the objections here presented. This rule is too well established in this State to necessitate at this late date the citation of authorities in support thereof.

Nor do we think that the objection that the instructions assume that the Mississippi Valley Trust Company was in charge of and in control of the Century Building and operating the elevator at the time of the injury is well taken. All of the evidence in the case for both parties shows that it was so operating it, and there is not a particle of evidence to the contrary. Even though the instructions assume that fact to be true, which clearly they do not when all are read together, yet under the state of the evidence as disclosed by the record that assumption would not have been erroneous. [Sotebier v. Railroad, 203 Mo. 702.]

The instructions given for respondent declare the law as it is laid down by this court in many decisions, and especially in this case when formerly here.

II. It must follow from what is said in paragraph one of this opinion that the action of the court in refusing instruction B asked by appellants was not error. It told the jury that the burden of proving the specific facts which caused the injury rested throughout the case upon respondent.

All of the authorities are to the contrary.

III. Appellants objected to the introduction of testimony which tended to prove the condition the elevator was in prior to the date of the injury. Some of this evidence related to its condition as far back as two years prior to that time, and on down within a few days of the injury. Learned counsel have not suggested why this evidence was not admissible, and we are unable to discover why it was not. It tended to show that the elevator would not run properly; that the cable was rusty and rotten; that bolts were loose;

that the guide shoes were constantly getting out of place; and that the rod governing the safety appliances was so bent they would not properly perform their functions. We think this evidence was clearly admissible.

The witness Fitzhugh testified, over defendants' objections, that he had reported to engineer Pate about the guide-shoes getting out of position and that the safety-dogs would not work properly. The evidence that the shoes got out of position and that the dogs would not work was clearly admissible, and we are unable to see how the fact that Fitzhugh reported those defects to Pate benefited respondent or injured appellants. If error, it was harmless; and under the statute we should not reverse the judgment for such error.

All other objections presented are fully answered by the opinion in the case when it was here before.

Finding no error in the record, the judgment is affirmed.

All concur except *Valliant, P. J.*, absent.