HELEN STEFFEN, a Minor, by ROSE STEFFEN, Her Next Friend, Appellant, v. SOUTHWESTERN BELL TELEPHONE COMPANY, a Corporation.—56 S. W. (2d) 47.

Division Two, December 14, 1932.

*John A. Moore* and *Roger D. Moore* for appellant.

580

*Earl H. Painter, Smith B. Atwood, William F. Coyle* and *James A. Waechter* for respondent;  *J. W. Jamison* of counsel.

582

FITZSIMMONS, C.—Plaintiff appeals from a verdict and judgment for defendant. She sued for $75,000 damages for injuries alleged to have been suffered while she was at work as a switchboard operator in the Grand-McRee Telephone Exchange of defendant in St. Louis. Plaintiff, at the trial, offered evidence tending to prove the allegations of her petition, namely, that while she was seated at defendant's switchboard on the afternoon of January 29, 1925, and was in the act of connecting an incoming call, there came from the head set which she wore, "an unusual and extraordinary violent noise, contrary to the usual action, operation, purpose and design of said head set and telephone system." As a direct result of this

event, plaintiff alleged and offered testimony tending to prove that she had suffered permanent deafness of both ears, neurosis, debility and sundry physical and nervous injuries and disorders. Defendant offered evidence tending to prove that an unusual and extraordinary violent noise did not come from the head set and telephone system into plaintiff's head on the day stated, or before or after; that she was not deaf nor neurotic nor otherwise afflicted as she alleged. Plaintiff charged negligence in general terms. Defendant conceded that it was a *res ipsa loquitur* case. Pertinent particulars of evidence will be stated in the examination of plaintiff's assignments of error, of which there are twenty-seven.

█ █ I. Eight errors, imputed to the trial court, are based on sustained objections to questions designed to elicit answers as to plaintiff's observed conduct and complaints of her physical condition. It is well settled that a non-expert witness may give his opinion as to the apparent health of a person whom he has had an opportunity to observe. [Partello v. Missouri Pacific Ry. Co., 217 Mo. 645, 117 S. W. 1138; Osborne v. Wells (Mo. App.), 211 S. W. 887, and cases cited in both of those opinions.] It is equally well settled that, if in a specific instance, the evidence should not have been excluded, the error is harmless if the same evidence is found in the testimony of the same or other witnesses, given before or after the objection was sustained. [Hecker v. Bleish, 319 Mo. 149, 3 S. W. (2d) 1008; Elstroth v. Karrenbrock (Mo. App.), 285 S. W. 525; Hurley v. Illinois Central Ry. Co., 221 Mo. App. 478, 282 S. W. 97; Bishop v. Musick Plating Works (Mo. App.), 3 S. W. (2d) 256.] In the instant case, the testimony excluded was, in every instance complained of, brought before the jury by the same or other witnesses. Indeed the court sometimes based its ruling on the fact that the evidence already was in. To give an instance: Loretta Fiala, also an operator at the Grand-McRee Exchange, testified that plaintiff, two or three days after the date of the injury sued for, returned to work. "She worked at the switchboard," the witness testified, "but it didn't seem like she could hear very well because she came to me several times to change her head set complained that she couldn't hear. She then didn't exactly look weak but she seemed to be bothered because she couldn't hear, kind of confused and nervous." Immediately after the foregoing testimony the court sustained an objection to a question as to what, if anything, did the witness observe, when plaintiff returned to work, as to plaintiff requesting repetition of telephone numbers. The trial lasted five days. The court acted within its discretion in restricting cumulative repetitions. These assignments are ruled against plaintiff.

II. Plaintiff complains of the admission in evidence of certain records of the S. S. Kresge Company and of the Syndicate Trust Building, offered by defendant for the purpose of showing the steadiness of the working activities of plaintiff as a sales girl in one case and as an elevator conductor in the other, subsequent to January 29, 1925, the date of her alleged injury. The record evidence in question tended to refute plaintiff's testimony of her irregular and intermittent attendance at the places of her later employments. Mrs. Margaret Brady, a witness for defendant, testified that she was personnel director of the S. S. Kresge Company; that plaintiff worked for that company from November, 1927 to April, 1928; that there was in use in the store a time clock and time card system; that, at the end of each week, the number of days that each employee was present in the store as shown by the time cards, was recorded on the payrolls; that a certain payroll record which the witness produced she herself made from the time cards; that the cashier helped her to figure the payrolls and aided in transcribing on the payrolls the data shown on the time cards; that (in answer to the court's question) the payroll record was kept under the direction of the witness. Plaintiff herself, in her case in chief, testified that Mrs. Brady had charge of the books and records. Plaintiff objected to the admission of the payroll record for the reason it was not shown that the record was made by a person who had knowledge of the facts stated therein. The objection was overruled and the witness testified to the number of days that plaintiff worked for the Kresge Company each week during the period of her employment. Appellant now contends that the cashier was a necessary witness to make the payroll record admissible. We are not of that opinion. Mrs. Brady had more knowledge of the daily attendance of plaintiff than the cashier had. The payroll record was made up from the time cards partly by Mrs. Brady and partly by the cashier under the direction of Mrs. Brady.

Plaintiff has cited many authorities from other jurisdictions to sustain her contention that the books of account of third persons are not admissible unless supported by the testimony of the person who had knowledge of the recorded transaction. Aside from the degree of knowledge which Mrs. Brady had it may be said that, in each of the cited cases, the books of account had a direct bearing either upon the question of liability for the debt sued for or upon the amount in controversy. In the instant case the payroll records of the Kresge Company only bore upon the measure of damages, in the event the jury should find in favor of plaintiff upon the issues of plaintiff's injury and defendant's negligence. The jury in fact found these issues in favor of defendant. It may be added that books of

account are frequently admitted for the purpose of corroborating or impeaching a witness' testimony although not supported by proof of a character to render them admissible as substantive evidence for the purpose of proving items of account or other contents. [22 C. J. 892; Healey v. Wellesley & Boston Street Ry. Co., 176 Mass. 440.] In the latter case a time book of the sewer department of the city of Newton was admitted in evidence to contradict the testimony of a witness that the plaintiff had not worked regularly after he received the injury for which he sued the defendant street railway. That is precisely the case here. Plaintiff's testimony that she was off frequently while she worked at Kresge's was contradicted not only by the evidence of the records produced by Mrs. Brady but by the testimony of the store manager and at least one other sales girl.

Miss Staib, employed by the Syndicate Trust Building, testified that plaintiff worked there as an elevator conductor from May, 1926 until June, 1927, and she produced a time book, kept in the regular course of business of the building company, to show how many days in each by-weekly period plaintiff was absent from duty during the period of her employment. Plaintiff objected to the admission of this book in evidence for the reason that the elevator starter did not testify. The court overruled the objection, and we are of opinion that there was no error in this ruling for the reasons stated as to the Kresge record.

█ III. Plaintiff complains of defendant's given Instruction No. 3 defining ordinary care. It was in the usual form of that instruction. But plaintiff contends that, defendant being a large public service corporation, it was misleading and confusing to instruct the jury that ordinary care was "such care as a person of ordinary prudence would exercise," etc. This standard of comparison long has been approved in actions against corporations which, however large or monopolistic, are artificial creatures that act through the agency of human persons. [Feary v. Metropolitan Street Railway Co., 162 Mo. 75, l. c. 97, 62 S. W. 452; Turnbow v. Dunham, 272 Mo. 53, 197 S. W. 103.]

Plaintiff also urges that to define ordinary care generally without calling attention to particular acts or omissions shown in evidence is reversible error. In support of this there are cited cases of general negligence and also of specific negligence in all of which proof of specific negligence was given. In the instant case general negligence was pleaded and no evidence was offered tending to prove specific negligence. There was expert testimony that the extraordinary noise complained of might have been caused by the escape into plaintiff's head set of 110 volts of electricity used in a device called a "howler,"

and used also in the operation of coin telephones, or by the failure of arrestors to divert intruding high voltage currents. But there was no factual evidence, direct or circumstantial, tending to prove specific negligence. Therefore these criticisms of the instruction fail.

■ IV. Plaintiff charges that the trial court committed reversible error in giving defendant's instructions 4, 5 and 7, for the reason that these instructions were in conflict with the plaintiff's main Instruction No. 1 which was drawn upon the *res ipsa loquitur* theory. The instant case, it was conceded, was one of general negligence on plaintiff's theory of the occurrence. But, contrary to the necessities of most general negligence cases, defendant here did not seek to overcome the presumption of negligence raised by plaintiff's prima-facie case by explanations which admitted the fact of injury. The defense was that the accident did not happen and that plaintiff was not deaf or otherwise afflicted as she alleged. Defendant's instructions assailed should be examined in the light of this issue of fact. Plaintiff's Instruction No. 1 is elaborate and covers nearly four pages of printed record. In substance it informed the jury it should return a verdict for plaintiff if the jury found and believed from the evidence that defendant operated a telephone system; that part of the system consisted of and was operated by means of the Grand-McRee Exchange and the switch board and head sets thereof and human telephone operatives at the switchboard; that on January 29, 1925, plaintiff was acting as a switchboard operator at the Grand-McRee Exchange and had on her head one of defendant's head sets with the receiver to her ear; that, while she was so acting, an unusual and extraordinary, violent noise, force and energy came from the switchboard and telephone system and head set into her ear and thereby she received personal injuries; that plaintiff's duty as an operator was limited to the switchboard and head set; that she did not construct the switchboard or head set or receiver or any part of the telephone system and was ignorant of the details of their construction; that all of this information was within the knowledge of defendant which had exclusive possession and control of the telephone system and of its operation; that had such system and parts been properly constructed, maintained and operated and had defendant exercised ordinary care, such unusual and extraordinary noise would not have occurred and plaintiff would not have been injured.

Defendant's Instruction No. 4 directed the jury to return a verdict for the defendant if the jury should find that defendant did not know and in the exercise of ordinary care "could have not discovered any unsafe condition in the switchboard and head set or its appliances, if you find there was any unsafe condition."

Defendant's Instruction No. 5 informed the jury that the charge in this case was negligence, and that if the jury found that defendant was not guilty of negligence in any respect in connection with the maintenance, operation and control of the switchboard and head set the plaintiff was not entitled to recover.

Plaintiff urges in her motion for a new trial and in her assignments here that the trial court committed reversible error in giving defendant's instructions 4 and 5 because they were in conflict with plaintiff's Instruction No. 1 and were not applicable to a *res ipsa loquitur* case. We do not so interpret those instructions. The major issue of fact, raised by defendant's answer, a general denial, and supported by defendant's evidence, was whether a violent noise passed from the head set into plaintiff's ears and whether plaintiff was injured. In many general negligent cases, such as the fall of a passenger elevator (Orcutt v. Century Building Company, 214 Mo. 35, 112 S. W. 532), collision of street cars (Stofer v. Dunham (Mo. App.), 208 S. W. 641), or wreck of a train upon a bridge (Bond v. St. Louis-San Francisco Railway Co., 315 Mo. 987, 288 S. W. 777), the event causing the injury sued for is conceded. Here the event namely the violent noise and the injury and of course the charge of negligence are denied. From plaintiff's evidence of the noise and the resultant injury "a substantial inference of fact arose, namely, that defendant had in some respect failed to exercise that . . . degree of care which under the law it was incumbent upon it to exercise. The facts put in proof were therefore evidence of negligence on the part of defendant." [Bond v. Railway Co., 315 Mo. 987, l. c. 1002, 288 S. W. 777, l. c. 782.] On the other hand, the testimony of defendant's witnesses that there was no noise and no injury was evidence that defendant was not negligent. Plaintiff in her Instruction No. 1 imputed to defendant want of ordinary care, in the management, control and operation of the mechanism of its telephone system, and defendant had the right to have presented to the jury by instructions the converse of the charge of negligence. And this was the scope and the purpose of instructions 4 and 5.

V. Is defendant's Instruction No. 7 in conflict with plaintiff's Instruction No. 1? The last part of Instruction No. 1, not heretofore summarized, was as follows: "In this connection you are further instructed that in the event you find and believe from the evidence all the other requirements, facts and circumstances set out and required tó be found and believed by you in the foregoing part of this instruction, then as to the question of negligence of the defendant you may presume that the unusual and extraordinary noise, force and energy, if you find such as aforesaid, and the injury result-

ing therefrom, if any, were occasioned and directly caused by the negligence of the defendant and then the burden of proof is shifted upon the defendant to show to the satisfaction of the jury that the same was caused through no negligence of defendant, and unless it be so shown, the jury should find a verdict for plaintiff.''

Defendant's Instruction No. 7 informed the jury that plaintiff was not entitled to recover merely because she may have suffered injury. ''You must be satisfied,'' the instruction went on, ''by the preponderance or greater weight of all the evidence, that plaintiff's injuries were caused by defendant's negligence, and if you find and believe from the evidence, that defendant did exercise ordinary care and was not guilty of negligence in any respect contributing to plaintiff's injury, then and in that event plaintiff is not entitled to recover and your verdict must be in favor of the defendant.''

Defendant's Instruction No. 7 must coordinate and not conflict with plaintiff's Instruction No. 1 to the extent that Instruction No. 1 correctly states the applicable law. But Instruction No. 1 is not a correct statement of the law as declared in the latest pronouncement of this court in McCloskey v. Koplar et al., 329 Mo. 527, 46 S. W. (2d) 557. Instruction No. 1 informed the jury that if it found and believed from the evidence all the other requirements, facts and circumstances hypothesized in the forepart of the instruction, then the *burden of proof* was shifted to the defendant to show to the satisfaction of the jury that the unusual and extraordinary noise, force and energy and the injury resulting therefrom was not caused by any negligence of defendant. Under the rule stated in the McCloskey case, supra, Instruction No. 1 is not the law in so far as it shifts to defendant the burden of proof. And because it does attempt to shift the burden of proof Instruction No. 1 is prejudicially erroneous and Instruction No. 7 is not to be condemned even if it should be in conflict with Instruction No. 1. The opinion of the court en banc by ELLISON, J., is a profound research of the opinions of this court upon instructions in *res ipsa loquitur* cases which have attempted to shift the burden of proof as did Instruction No. 1 here. All these cases, including some relied on by plaintiff, were overruled. The closing and pertinent paragraph of the opinion in the McCloskey case (329 Mo. 527, 1. c. 542, 46 S. W. (2d) 1. c. 564) is as follows:

''An instruction which places the burden of proof on the wrong party is prejudicially erroneous, because it puts the risk of nonpersuasion, or the duty of convincing the jury by the greater weight of the evidence, on the opposite party, who, according to law, has the right to prevail even if the evidence is merely in equipoise so that the jury is left in doubt.''

In view of the latest pronouncement of the law upon the question of the burden of proof, and the issues of fact raised by the pleadings and the evidence, Instruction No. 7 is not subject to the criticism which plaintiff heaps upon it.

VI. Plaintiff assails defendant's Instruction No. 6 because it did not define the words "insure" and "guarantee." The instruction told the jury that the defendant did not insure the safety of plaintiff and did not guarantee that she would not be injured while she was working for defendant, and therefore that the plaintiff could not recover if the jury found "that the injuries to plaintiff, if any, were not caused by defendant's negligence as defined in these instructions." This is, primarily, a negligence instruction. The preliminary clauses containing the words "insure" and "guarantee" are of secondary importance and we cannot find that failure to define the criticised words is ground for reversal.

VII. Defendant's Instruction No. 8 is said to be prejudicially erroneous as being argumentative, misleading and confusing in its statement that "the fact that one of the parties is a corporation should not affect your minds in any way." This instruction has been held to express a proper rule of law and to be unprejudicial. [Turnbow v. Dunham, 272 Mo. 53, 197 S. W. 103; Feary v. Metropolitan Street Ry. Co., 162 Mo. 75, l. c. 97, 62 S. W. 452.]

VIII. The court of its own motion gave Instruction No. 9 defining burden of proof and preponderance of the evidence. The instruction is in approved and frequently used form. We find no merit in the contention that the instruction is prejudicially erroneous because it did not define the words "as to such issue."

IX. Plaintiff seeks reversal of the judgment for the reason that the deputy sheriff on duty in the courtroom at the beginning of the trial did not call into the jury box eighteen talesmen in the alphabetical order in which their names appeared upon the jury list, but that he knowingly skipped the names of three talesmen, and that this conduct of the deputy sheriff showed that he selected talesmen prejudiced against plaintiff and her case at his own whim and wish. At the hearing of the motion for a new trial the court took testimony on these allegations. The deputy sheriff testified that he did not call one of the talesmen into the box because the jury list showed that he was an employee of defendant and the deputy sheriff anticipated a peremptory challenge as to that man. The deputy sheriff further testified that when court opened on the morning of

590

the first day of the trial, he, at the direction of the judge, called the roll of all jurors who had been subpoenaed for duty in the court during that week, and that the two other men whom the deputy did not call into the box at the beginning of the trial of the instant case, were among those men who did not answer and were marked absent at the initial roll call of the panel. There was independent corroborating testimony as to the tardy arrival of one of these men. Plaintiff filed in support of her motion for a new trial affidavits of these two jurors to the effect that they were in the courtroom when it convened. They did not state in their affidavits whether a roll was called and whether they answered to their names. The trial judge, by the form of the leading questions which he directed to the deputy sheriff, disclosed an independent recollection of the roll call at the opening of court. This is a matter which rests within the sound discretion of the trial court, and it does not appear that this discretion was abused.

■ X. Plaintiff's last assignment of error is predicated upon the refusal of the trial court to grant a new trial for alleged misconduct, calculated to influence the jury. The specification in the motion for a new trial is supported by an affidavit of Jacob Root, one of the jurors in the trial of the case. The gist of the affidavit was that, during a recess of the court upon one of the days of the trial, a man, not a member of the jury, entered a lavatory in the courthouse and, in the presence of and to Root and another juror or jurors said: ''Did you see the plaintiff jump and laugh when the other girl said that she called her a dumb-bell; she nearly fell out of her chair; she can hear as good as anybody.'' Root in his affidavit further said that during the same recess and twice again during the trial he talked about this remark to other jurors. He also swore he did not know whether the remark was true or not.

The rule to which there is no exception in this State is that a juror will not be heard to impeach the verdict, whether the alleged misconduct occurred inside or outside the jury room. [Evans v. Klusmeyer, 301 Mo. 352, 256 S. W. 1036 l. c. 1039-1040.] Plaintiff appears to be cognizant of this rule because in her brief she cites only cases from other jurisdictions. This division of this court observed in the Evans case that ''it is held in other jurisdictions, with possibly a helpful discrimination in the proper administration of justice, that a distinction should be made in the application of the general rule between misconduct occurring inside and outside of the jury room.'' But in that case in which misconduct occurred outside the jury room the court did not modify or make exception to the rule. The reason

for the rule is thus stated in Evans v. Klusmeyer, supra, 256 S. W. 1039:

"The necessity for the stability of judgments is urged as the reason for the unqualified application of the rule in this State, a modification of which it is contended would have the effect of placing the verdict of a jury in the power of a single juryman. [State v. Hannibal & St. Joe Railroad Co., 37 Mo. 1. c. 265.]" Other Missouri authorities adverse to the allowance of this assignment of error are: Banks v. Empire District Electric Co. (Mo.), 4 S. W. (2d) 875, 1. c. 880; Green v. Terminal Railroad Assn. of St. Louis, 211 Mo. 18, 109 S. W. 715, 1. c. 718; Boyle v. Bunting Hardware Co. (Mo. App.), 238 S. W. 155. The verdict in the instant case was unanimous. There is no showing whatever that the remarks of the nameless stranger influenced the verdict of the jury. The assignment of error was stated fully in plaintiff's motion for a new trial and, it is to be presumed, received the careful consideration of the trial .court. The point is ruled against plaintiff.

No reversible error appearing, the judgment is affirmed. *Cooley* and *Westhues, CC.,* concur.

PER CURIAM:—The foregoing opinion by FITZSIMMONS, C., is adopted as the opinion of the court. All of the judges concur.