Arthur Lee SMITH, a Minor, by Idella Smith, His Parent and Natural Guardian, Appellant (Plaintiff),

v.

Harry Edward BOCKLITZ and Airlines Transit Corp., Respondent (Defendant).

No. 48258.

Supreme Court of Missouri, Division No. 1.

March 13, 1961.

Bernard Susman, St. Louis, for appellant-plaintiff.

Don R. Williams, St. Louis, for respondent-defendant.

HYDE, Judge.

Action for damages for $20,000 for personal injuries. There was a jury verdict for defendant and plaintiff has appealed from the judgment entered.

Plaintiff claims error in striking certain of his answers and an answer of one of his witnesses, on direct examination, and instructing the jury to disregard them. Plaintiff (nine years old at the time) was struck by a car going north in the middle lane of three northbound lanes of Kingshighway in St. Louis. Plaintiff and a companion had crossed the three southbound lanes on the west side of the street and were standing by defendant's bus which was stopped in the western northbound lane near the middle line of the street. Cars were stopped in that lane for a traffic light ahead. Plaintiff said he started east across the northbound lanes when defendant's bus driver, Puhse, made a motion in that direction with his hand. The negligence submitted by plaintiff's verdict-directing instruction was as follows:

"that said bus was stopped south of Arthur Lee Smith; that Puhse saw Smith there; that thereafter, Puhse made a motion with his hand; that the motion was seen by Arthur Lee Smith; that the motion was one made with said hand diagonally from west to east; that the motion was made with the hand moving more rapidly from west to east than in any other direction; that at the time Puhse made the said motion, an automobile being driven by Harry Edward Bocklitz was in motion northwardly on Kingshighway; that it was moving alongside the bus in the lane immediately adjacent to the east side of the bus; that Puhse knew that the said automobile was in motion in such position at the time he made the said motion with his hand; that such motion was of such nature that a child of Arthur Lee Smith's then age, experience, and understanding would ordinarily take and understand it to be a sign or signal from Puhse to proceed eastwardly across Kingshighway; that Puhse failed to exercise ordinary care in making the said motion with his hand under such circumstances; that he was thereby negligent; that Arthur Lee Smith took and understood the said motion of Puhse's hand to be a sign or signal that he should proceed eastwardly across the street; that he then and there so proceeded; that in so doing, he came into the second traffic lane west of the east curb; that he was then and there struck by the automobile operated by the said Bocklitz."

The rulings concerning the answers of plaintiff and his companion Charles Harbert and their accounts about Puhse's actions were as follows:

(Plaintiff's testimony) "Q. Now was there any other traffic on Kingshighway going north on Kingshighway that was south of you at the time that you were in the center of the street? A. There was some passing cars but we stood there until they had gone past before we had started—before the bus driver had motioned for us to go on across.

"Mr. Green: Objection, your Honor. We object to the statement and ask that it be stricken as not being responsive. It's a conclusion on the part of this witness.

"The Court: It may be stricken.

"Mr. Green: And the jury instructed to disregard it.

"The Court: The jury is so instructed to disregard it. * * *

"Q. And did anything happen while you were standing in that particular area in front of the bus? A. We waited there awhile and the bus driver motioned for us to cross.

"Mr. Green: Objection, your Honor. Again we ask that that be stricken, that the jury be instructed to disregard it and, if necessary, that the witness be instructed not to refer repeatedly in that manner. He can tell what the operator did but he cannot tell what conclusions he drew from the operator's action.

"The Court: Objection sustained. You can tell us, Arthur, what the operator did.

"Q. (By Mr. Susman): Tell us, Arthur, what did the operator do at that time? A. He moved his hand diagonally.

"Q. In which direction? A. Towards the east curb.

"Q. And was that a—can you describe it more fully? Was it a rapid motion, a slow motion or what kind of a motion was it?

"Mr. Green: Objection to the leading and suggestive nature of the question.

"The Court: Overruled.

"Q. (by Mr. Susman): Describe the motion that he used. A. He were moving his hand diagonally faster to the east curb than he was to the west curb. * * *

"Q. And when he moved his hand in this rapid fashion to the east curb as you have described what did you do then, if anything? A. I started across the street."

(Harbert's testimony) "Q. While you were standing there in front of the bus did you see the bus driver do anything at all? A. Yes. Q. What did you see him do? A. I saw the bus driver motion the direction of us to go east to the east side of the curb.

"Mr. Green: We'll object to this as being a conclusion on the part of the witness, what the motion meant. We don't object to his testifying as to what the operator's hands did but we do object to the interpretation of what the operator meant. Object to that and ask the jury be so instructed.

"The Court: Jury is so instructed.

"Q. (by Mr. Susman): Describe in detail what this bus operator did that you saw? A. He motioned to the east curb.

"Q. He motioned his hand to the east curb, you say? A. Yes.

"Q. Did you see him do that? A. Yes.

"Q. Were you looking at him at that time? A. Yes.

"Q. And when he did that what did you do? A. We proceeded across."

The bus driver denied that he waved to the boys or motioned to them in any way. Plaintiff had made a separate settlement with Bocklitz before the trial.

While these rulings of the trial court may have been technical they were technically correct. The answers stricken did state the witnesses' conclusions as to the bus driver's intention. It is argued that these answers represented the state of mind of plaintiff, a nine year old boy, but instead these answers undertook to represent the state of mind of the bus driver. It is also argued that these answers expressed to plaintiff and his companion an instant idea which could only be stated by them as "he motioned for us to go across" and could not be precisely reproduced to the jury exactly as it appeared to plaintiff and his companion in any other language. This contention is refuted by their testi-

mony hereinabove set out in which they clearly described the kind of hand motions the bus driver made, the circumstances under which they were made, and how they acted when they saw these motions. This gave the jury all the facts needed for them to determine what the bus driver's motions meant to plaintiff and whether or not he started across because of them. This also answers plaintiff's contention that the stricken answers were necessary to prove essential elements of his case, as pleaded and submitted.

Plaintiff relies on such cases as Brawley v. Esterly, Mo.Sup., 267 S.W.2d 655, 661, 662, and Partello v. Missouri Pacific R. Co., 217 Mo. 645, 117 S.W. 1138. In that case, the questioned testimony concerned the appearance of wheel marks and skid marks, whether they "looked fresh", "were fresh", or were "skid marks of dual wheels." In ruling against the claim of error, it was noted that some of this came in without objection, some on cross-examination and that the witness had qualifications as an expert as to some of it. However, we said: "In many cases where the thing a witness has seen is impossible or difficult of description to a jury precisely as it appeared to the witness at the time he saw it, the nonexpert witness may properly testify in a comprehensively descriptive manner which is in a sense an opinion, or a conclusion ordinarily within the province of the jury. It would seem it is of greater aid to the jury for him to say it that way, because the nature of a thing, difficult of description, may be more clearly conveyed to the jury that way than if the witness were obliged to use verbiage meticulously describing the minute physical aspects of the thing." The Partello case held that it was proper for nonexpert witnesses to state their opinions as to the plaintiff's state of health before injured. Other cases cited by plaintiff are: Parker v. Aetna Life Ins. Co., 289 Mo. 42, 232 S.W. 708, 717; Fulton v. Metropolitan St. R. Co., 125 Mo.App. 239, 102 S.W. 47, 48–49; Kirchof v. United Rys. Co. of St.

Louis, 155 Mo.App. 70, 135 S.W. 98, 101; Adams v. Carlo, Mo.App. St. Louis 1935, 84 S.W.2d 682, 684; Connecticut Mutual Life Ins. Co. v. Lathrop, 111 U.S. 612, 620, 4 S.Ct. 533, 28 L.Ed. 536.

Plaintiff herein was not describing the physical appearance of an object or locality, condition of a person or marks made by vehicles or animals. He was stating not what he understood the bus driver's hand movements to mean but instead his conclusion as to what the bus driver meant by them. While we do not say it would have been prejudicial error to refuse to strike the answers, we do hold it was not error to strike them and require the movements to be described. This was done in complete detail, together with what plaintiff did upon observing them, and thus the whole situation was put before the jury more fairly and clearly than the stricken answers alone would have done.

The judgment is affirmed.

All concur.