SPRADLIN'S MARKET, INC., Appellant,

v.

SPRINGFIELD NEWSPAPERS, INC., Respondent.

No. 51197.

Supreme Court of Missouri,

Division No. 2.

Feb. 14, 1966.

Joseph Cohen, Charles S. Schnider, John E. Shamberg, Joseph P. Jenkins, Edward G. Collister, Jr., Kansas City, Kan., Sam Gardner, Monett, for appellant.

Richard Farrington, Jack S. Curtis, Farrington & Curtis, Springfield, for respondent.

STOCKARD, Commissioner.

Plaintiff has appealed from a judgment in favor of defendant in its action for libel in which actual and punitive damages totaling $250,000 were sought.

Defendant published in its newspapers two articles, the first of which appeared in

the "Springfield Leader & Press" on October 1, 1956, and was as follows:

"Spradlin, Four Others Face $775 in Penalties Orders Permanent Injunction Against Former Fruit Dealer

"Federal Judge R. Jasper Smith this morning issued a permanent injunction against Richard B. Spradlin, former Commercial Street fruit dealer, and four other members of his family, from dealing in perishable commodities without a license.

"He also imposed civil penalties of $775 on Spradlin and the others for the 64 alleged violations.

"As the story was told the court by assistant U. S. Attorney Horace Kimbrell, the Agriculture Department had made a 'reparations award' to certain persons with whom Spradlin did interstate business, under authority of the perishable commodities act.

"Spradlin, according to Kimbrell, refused to pay the award, after which the Agriculture Department revoked his license to engage in the business of selling perishable commodities.

\*     \*     \*     \*     \*     \*

"But, said the government attorney, Spradlin continued to operate without a license, using various firm names with the name of Spradlin. Federal Judge Albert A. Ridge accordingly issued a temporary injunction.

"Wayne Walker, defense attorney, told the judge he would not try to condone certain violations, but said no trickery was intended in the use of various names. These variations, he said, originated with customers.

"Walker also said Spradlin's sons, Robert Dale and Loren Wayne, along with a son-in-law, Louis Myres, started a food business of their own while the father was involved. Eventually, he said, they took on perishable products from the senior Spradlin.

"The three younger men, along with Mrs. Mary Spradlin, wife of Richard Spradlin, were named by the government in the injunction proceedings. The penalties imposed by Judge Smith may be paid by any of the five.

"Kimbrell asked Judge Smith to assess the maximum penalty of $500 for the first violation and $25 each for 63 others.

"Walker, however, offered to show that Spradlin had already begun to pay some of the original 'reparation award' and asked Judge Smith not to make the penalty so stiff, Spradlin could not engage in business. He noted that the original Spradlin business location had been obliterated by the Commercial Street urban highway project.

"Judge Smith decided on a $100 penalty for the first violation, $10 each for the next sixty and a maximum penalty of $25 each for three allegedly committed after the complaint had been filed."

The second article appeared in the "Springfield Daily News" on October 2, 1956, and was as follows:

"Restraining Order Against Spradlin Made Permanent

"A temporary order restraining Richard B. Spradlin, former Commercial Street fruit dealer, from doing business in perishable commodities was made permanent yesterday by Federal Judge R. Jasper Smith.

"Judge Smith also imposed penalties of $775 against Spradlin for 64 alleged violations of Agriculture Department regulations.

"Equally affected by the order are four of Spradlin's relatives including his wife, Mrs. Mary Spradlin, two sons, Robert Dale Spradlin and Loren

Wayne Spradlin, and a son-in-law, Louis Myers.

"The case had started with a 'reparation award' assessed against Spradlin by the Agriculture Department under the perishable commodities act. Spradlin allegedly refused to pay the award and the government revoked his license. When he continued to deal in such commodities, the government asked an injunction and got a temporary one from Judge Albert A. Ridge."

After the pleadings were at issue the defendant moved for summary judgment, and submitted as an exhibit, supported by an affidavit as to accuracy, a transcript of the proceedings in the federal court on October 1, 1956. Also submitted were copies of the newspaper articles, and an affidavit of the clerk of the federal court to the effect that a document entitled "Findings of Fact, Conclusions of Law, Judgment, and Order Making Preliminary Injunction Permanent" entered in the proceeding in the federal court, although dated as of October 1, 1956, was not in fact filed until October 3, 1956, which was subsequent to the publication of the newspaper articles. No counter affidavits were filed. Therefore, for purposes of this appeal we accept as correct the statements in the affidavits.

Because of the length we shall not set out a verbatim statement of what occurred in the federal proceedings as reflected by the transcript. It appears that what was called a "reparation order" was entered against Richard B. Spradlin by the United States Department of Agriculture. He refused or at least failed to pay the amount of the "reparation order," and his license issued pursuant to the Perishable Agriculture Commodities Act of 1930 was cancelled. Thereafter, the United States sought and obtained a temporary injunction against him, his wife, two sons and his son-in-law. The United States also brought a civil suit, as authorized by the Perishable Agriculture Commodities Act, to recover certain penalties for operating without a license, and it

also sought to have the injunction made permanent. The proceeding on October 1, 1956, about which the two newspaper articles were written, pertained to the hearing on the civil action for penalties and the application to make the injunction permanent.

Counsel for the government recited generally to the court the above information, and stated that the proposed order "makes permanent the injunction previously granted * * * to restrain all these people from operating in any fashion until such time as any one of them obtains a license from the Department of Agriculture," and that "at any time any one of them would obtain a license, then of course the injunction ceases to function." Counsel also explained that illegal sales had been made under various names including "R. B. Spradlin," "Spradlin Fruit," "Spradlin Fruit Company," "Spradlin Market," "Spradlin Market, Incorporated," and others. In his recommendations he proposed a penalty of $500 for the first violation, and pointed out to the court that the maximum penalty for the others, of which there were sixty-three, was $25 each. Subsequently the court imposed a penalty of $100 for the first offense, $10 for each additional offense except three which occurred after the complaint had been filed, and for those three the maximum of $25 each was imposed.

Counsel for Richard B. Spradlin stated to the court that there was no ulterior motive in the use of the various names, and stated that "prior to 1954 Mr. R. B. Spradlin was engaged in the transportation of these commodities and had a license." Counsel then related that after their military service the two sons and the son-in-law of Richard B. Spradlin left his business and went into business for themselves "just selling groceries, and they did not come under this Act at all," but Richard B. Spradlin "realized" their grocery store would be "a good outlet for these perishable commodities" so "the corporation applied for a license under the act," but in the meantime "this complaint had been filed against Mr. Richard B. Spradlin, and since the owners of the cor-

poration were his wife, sons and son-in-law, * * * the Department did not feel they could grant them a license. So they were never granted a license." Counsel continued as follows: "In the meantime the young men, the two sons and the son-in-law, have been unable to live since they couldn't operate and have gone into other jobs, other business. Also, the Commercial Street widening project got under way during this time. So they were compelled to close their grocery store because it was taken in a condemnation suit. So they finally opened a little outdoor market. But since that time they haven't been able to engage in and buy these perishable commodities of other states. All they have been able to purchase was Southeast Missouri watermelons and Southeast Missouri peaches, which come on in the state and which don't come under the Act. This is about the only thing they have been able to sell in the way of perishable commodities except groceries. So the result of that, they justly, rightly and actually have no license. As I say, the boys have been compelled to quit the business and have got jobs elsewhere, and Mr. Spradlin is just running this place over on Commercial Street, being unable actually to make any profit but seeking to keep his name alive and trade alive, so when he can get himself situated so he can, he wants to go back into business." Counsel then added that if the court "imposes a fine which is impossible for the people ever to pay, then of course we can't ever get back into the business. None of these folks can." Later, counsel remarked that "They have no assets. Mr. Spradlin has a couple of trailer trucks which are mortgaged, and which he formerly used in this business. They rented the property which they formerly occupied."

The transcript shows that counsel for both sides had agreed to the substance of an order, subject to the court's approval, which required a change after the court announced the penalty. The final order enjoined Richard B. Spradlin, his wife, his sons and his son-in-law "from carrying on a business as a commission merchant, dealer, or broker, dealing in perishable agricultural commodities in interstate or foreign commerce * * without a valid and effective license under said Act." This order was dated October 1, 1956, but the affidavit of the clerk of the court, not controverted and therefore accepted by us as correct, established that it was not filed until October 3, 1956, which was after the publication of the two newspaper articles.

In ruling on defendant's motion for summary judgment the trial court held that the two newspaper articles "show on their face that they constitute a report of a matter of public interest and show on their face that they are a report of judicial proceedings of the United States District Court for the Western District of Missouri and, as such, are privileged articles provided that the articles as written and published constitute a fair, impartial and reasonably accurate report of what actually occurred in the judicial proceedings held in said court on October 1, 1956, * * *." The court further found that "when compared with the newspaper articles * * * the transcript shows, as a matter of law, that the articles, as written and published, constitute a fair, impartial and reasonably accurate report of what actually occurred in said judicial proceeding being held in said court on October 1, 1956, and that as a matter of law, defendant has no liability to the plaintiff for the publication of said articles * * *."

Preliminary to considering plaintiff's points on this appeal we note two matters. Plaintiff is Spradlin's Market, Inc., a corporation. The proceedings in the federal court were against Richard B. Spradlin and four others as individuals. Spradlin's Market, Inc., as such, was not a party to the federal proceedings, and the newspaper articles did not mention it. It is alleged in the petition, however, that Richard B. Spradlin was the principal stockholder, that he managed and conducted the business, and because of his connection the business had come to bear the name "Spradlins" or "Spradlin's Market," and the name "Rich-

ard B. Spradlin" had become a part of, and synonymous with the business itself, so far as the public was concerned. We are not concerned on this appeal with the sufficiency of this colloquium. In addition, libel is defined by statute in this state which, in its material parts, is as follows: "A libel is the malicious defamation of a person made public by any printing, writing, sign, picture, representation or effigy tending to provoke him to wrath or expose him to public hatred, contempt or ridicule, or to deprive him of the benefits of public confidence and social intercourse, * * *." Section 559.410 RSMo 1959, V.A.M.S. In Coots v. Payton, 365 Mo. 180, 280 S.W.2d 47, this court held that a writing "must itself amount to a 'defamation', and that if (and only if) it is, then if it exposes one to hatred or contempt, etc., it is libelous." As this case is presented on this appeal we are not called upon to determine whether the newspaper articles constitute a "defamation" as that term is defined for the purpose of the libel statute. See Coots v. Payton, supra. Assuming they do, we do not see how they could provoke a corporation to wrath. Also, we do not regard the articles as such that would expose plaintiff to public hatred, contempt or ridicule. The articles could not deprive a corporation of social intercourse. That leaves only the possibility that it could be found that they deprived the plaintiff of public confidence. For the reason that we need not determine whether they constituted a "defamation" we need not rule, if they could constitute a "defamation," whether they could be found by a jury to deprive plaintiff of public confidence.

■ We turn now to the points in plaintiff's brief. The first is that the trial court erred in ruling as a matter of law that the two newspaper articles "were qualifiedly privileged in their entirety." The second is that the trial court erred in concluding as a matter of law that the newspaper articles "constituted a fair, impartial and reasonably correct report of judicial proceedings." Plaintiff does not set out in either point what parts of the articles it contends are not

qualifiedly privileged, and what parts it contends were not fair, impartial and reasonably correct. For this court to search the articles for portions thereof to support plaintiff's claim results in this court becoming, in effect, an advocate for plaintiff, an activity inconsistent with its function. The purpose of Civil Rule 83.05(e), V.A. M.R., in requiring that the points relied on "briefly and concisely state why it is contended the Court was wrong in any action or ruling sought to be reviewed" is most pointedly demonstrated in this case. Defendant apparently believed it to be necessary in its brief to laboriously compare each and every portion of the articles with the transcript of the judicial proceedings, a task unnecessary if plaintiff had complied with the rule. However, as stated in Schlanger v. Simon, Mo., 339 S.W.2d 825, 829, "sometimes an appellate court, in a spirit of helpfulness, will look to the argument in a brief for aid in determining the precise contention of error sought to be made in a point." When we look to the argument, it appears that plaintiff's contention is that the articles were libelous as to it because they referred to Richard B. Spradlin as a "former fruit dealer."

■ "Every impartial and accurate report of any proceeding in a public law court is privileged." Newell, Slander and Libel, § 450. However, such proceedings may be of too great length and require too much space to publish a verbatim report, so "the law permits the publication of an abridged report, provided it is fair and reasonably correct." Jones v. Pulitzer Pub. Co., 240 Mo. 200, 144 S.W. 441, 444; Warren v. Pulitzer Pub. Co., 336 Mo. 184, 78 S.W.2d 404, 413; Boogher v. Knapp, 97 Mo. 122, 11 S.W. 45. When the publisher "undertakes to state additional facts, not brought out in the hearing but gleaned from his own investigation, he does so at his peril, if they are false, exactly the same as he would in connection with an unprivileged matter," Warren v. Pulitzer Pub. Co., supra, but when the publisher does not have actual knowledge of the incorrectness of a statement in a judicial

proceeding, there is no duty on him to go outside the judicial proceeding and determine, its correctness. Grossman v. Globe-Democrat Pub. Co., 347 Mo. 869, 149 S.W.2d 362, 365. Therefore, whether in fact Richard B. Spradlin was still engaged in some form of fruit business so he could not properly be termed to be a "former fruit dealer" is not the issue in this case.

In support of its first point, that the court erred in ruling that the articles were privileged in their entirety, plaintiff argues that in the transcript of the judicial proceedings "there is not one reference to appellant as a 'former fruit dealer,'" and it "must be concluded, therefore, that these comments pertaining to appellant as a 'former fruit dealer' are not reports of judicial proceedings but conclusions or comments of the reporter with respect to such judicial proceedings." We assume that by use of the term "appellant" plaintiff intends to assert that there was no reference in the judicial proceedings to Richard B. Spradlin as a "former fruit dealer."

Counsel for the government stated that the permanent injunction would "restrain all these people from operating in any fashion" until a license was obtained. In addition, counsel for Mr. Spradlin, and this is the same as though Mr. Spradlin himself had made the statements, related to the court that "prior to 1954 Mr. R. B. Spradlin was engaged in the transportation of these commodities and had a license;" that the two sons and the son-in-law went into business for themselves "just selling groceries" but Richard B. Spradlin began using their grocery store as an "outlet for these perishable commodities" so the corporation applied for a license and it was refused; the sons and son-in-law could not make a living so they obtained jobs other places and the grocery store was closed because the site was taken in a street widening project; and Richard B. Spradlin is "just running that place on Commercial Street" so that "when he can get himself situated so he can, he wants to go back in business." The articles do not imply that the members of

the Spradlin family, other than Richard B. Spradlin, were former fruit dealers. Counsel also asked the court not to make the fine so high that Richard B. Spradlin "can never get back into the business," and reference was made to equipment which "he formerly used in this business," and to the business property which he "formerly occupied." There can be no question but that the statements in the newspaper articles that referred to Richard B. Spradlin as a "former fruit dealer" were properly ruled to be conditionally privileged if in the use of these statements the entire articles presented a fair and reasonably correct report of the judicial proceedings. See generally, Merriam v. Star-Chronicle Pub. Co., 335 Mo. 937, 74 S.W.2d 592. Therefore, plaintiff's first point is without merit. The only question presenting any problem is whether the trial court could properly determine in a summary judgment proceeding that the articles were a fair, impartial and reasonably correct report, or whether that question had to be submitted to a jury, assuming for the purpose of this appeal that the articles could constitute a libel under our statute.

Art. I, Sec. 8, Constitution of Missouri, V.A.M.S., provides that "* * * in suits and prosecutions for libel the jury, under the direction of the court, shall determine the law and the facts." It was expressly held in Jacobs v. Transcontinental & Western Air, Inc., 358 Mo. 674, 216 S.W. 2d 523, 6 A.L.R.2d 1002, that "this provision does not in any way affect the power of the court to decide as a matter of law that the statement claimed to be libelous is not capable of a defamatory meaning," and that the provision did not deprive a judge of the authority to direct a verdict. See also Diener v. Star-Chronicle Pub. Co., 230 Mo. 613, 132 S.W.2d 1143, 33 L.R.A.,N.S., 216; Boogher v. Knapp, supra; Tilles v. Pulitzer Pub. Co., 241 Mo. 609, 145 S.W. 1143. Summary judgment is authorized by Civil Rule 74.04(c), V.A.M.R., where the "pleadings, depositions, and admissions on file, together with the affidavits, if any,

show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." It is further provided in Civil Rule 74.04(h) that "In no case shall a summary judgment be rendered on issue triable by jury or the court without a jury unless the prevailing party is shown by unassailable proof to be entitled thereto as a matter of law."

■ In this case the trial court had before it the pleadings, the articles published by the defendant, the transcript of the judicial proceedings, and several uncontroverted affidavits. There was no issue of fact as to what was published, and there was no issue of fact as to what was said and done in the judicial proceedings. The words published were unequivocal and were not subject to different meanings. Assuming that the articles were a defamation, there was one issue, and that was whether the words published were conditionally privileged in that they constituted a fair, impartial and reasonably accurate report of the judicial proceedings. In determining this issue the published articles "should be regarded from the standpoint of persons whose function it is to give the public a fair report of what has taken place in a court of justice. Such a report is not to be judged by the same standard of accuracy which would be adopted if it were a report of a professional law reporter or a trained lawyer." Newell, Slander and Libel, § 457.

■ On this appeal, the question of the sufficiency of the evidence, that is, the evidence submitted to the trial court in support of and in opposition to the motion for summary judgment, is a question of law. If the evidence does not as a matter of law meet the minimum requirements to authorize the entry of summary judgment for defendant, the judgment must be reversed and the cause remanded for submission of the issue to a jury. However, "if under the evidence adduced the court would be compelled to direct a verdict for any of the parties, then said party is entitled to a summary judgment." Brown v. Prudential Insurance Company of America, Mo.App., 375 S.W.2d 623, 629. Although the question of the fairness and accuracy of a report of a judicial proceeding is generally for the jury, Age-Herald Pub. Co. v. Waterman, 202 Ala. 665, 81 So. 621, in this case there is no issue of credibility of witnesses, and there is no disputed issue of fact. When we compare the newspaper articles with the transcript of the judicial proceeding, and view the articles from the standpoint of persons whose function it is to give the public a fair report of what has taken place in a judicial proceeding, we necessarily rule that only one reasonable conclusion can be reached, and that is that the articles were fair, impartial and reasonably correct and that the trial court properly entered summary judgment for defendant.

The judgment is affirmed.

BARRETT and PRITCHARD, CC., concur.

PER CURIAM:

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges concur.