**AMERICAN FAMILY MUTUAL INSURANCE CO., Appellant,**

v.

**William S. LACY (Defendant Ad Litem), Defendant,**

**State Farm Insurance Co., Middlewest Freightways, Inc., Gelco Leasing, Inc., Liberty Mutual Insurance Co., Harvey Cullen and Mary Lou Cullen, John L. Turner and Joyce L. Turner, United States Fidelity and Guaranty Co., Respondents.**

**No. WD 43112.**

Missouri Court of Appeals, Western District.

July 30, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 1, 1991.

Application for Transfer Sustained Nov. 19, 1991.

Case Retransferred March 24, 1992.

Court of Appeals Opinion Readopted April 1, 1992.

John Edmund Turner, Kansas City, for appellant.

William S. Lacy, defendant ad litem (appointed counsel).

Keith Alan Cary and Phillip B. Grubaugh, Kansas City, for State Farm Ins.

Jeffrey Thomas O'Connor, Kansas City, for Middlewest Freightways, Inc.

John Charles Bragg, Grandview, for Harvey and Mary Lou Cullen.

Loeb H. Granoff, Kansas City, for John L. and Joyce L. Turner.

John H. Altergott, Jr. and Cary W. Miller, Kansas City, for U.S. Fidelity and Guar.

Before SHANGLER, P.J., and KENNEDY and FENNER, JJ.

SHANGLER, Judge.

The plaintiff American Family Mutual Insurance Company brought a petition for a declaratory judgment that the acts of its insured, Timothy C. Stoffers, in colliding with a vehicle operated by John L. Turner and occupied by Harvey H. Cullen were intentional and, therefore, excluded from coverage. The insured Stoffers died in the collision, and John Turner and Joyce Turner, his wife, and Harvey Cullen and Mary Lou Cullen, his wife, all made claims against William S. Lacy, as defendant ad litem, in a pending suit. Harvey Cullen also made a claim for workers' compensation benefits for injuries from the collision and that insurer, United States Fidelity and Guaranty Company, gave notice to plaintiff American Family of its assertion of a lien upon the claim made by Cullen against American Family. The vehicle being driven by John Turner was damaged. It was owned by Gelco Vehicle Leasing and at the time of the collision was leased to Middlewest Freightways, Inc.

American Family joined as defendants in the declaratory judgment action Lacy as defendant ad litem, and John and Joyce Turner, Harvey and Mary Lou Cullen, USF & G, Gelco and Middlewest, as those who had claimed against the plaintiff American Family under the policy issued to Stoffers, now deceased.[1]

The policy of insurance issued to Stoffers by American Family contained this exclusion from coverage:

This policy does not apply to:

. . . . .

2. **Bodily injury or property damage** caused by an intentional act of, or at the direction of, **an insured person** even if the actual injury or damage is different than that which was expected or intended. [original emphasis]

The defendants Middlewest Freightways, Gelco Leasing, Liberty Mutual and USF & G moved for summary judgment at the close of discovery. The basis for the motion was that, from the evidence known, "there [was] no genuine issue of material fact that the plaintiff's insured, Stoffers, *did* act with specific intent to cause harm to a third party." The trial court determined there was no genuine issue of material fact as to whether the insured Stoffers acted intentionally within the exclusionary clause in the policy, and entered summary judgment on the motion. The plaintiff American Family appeals.[2]

The party who moves for summary judgment bears the burden to show that no genuine issue of material fact remains, and so is entitled to judgment as a matter of law. Rule 74.04(c); *Schwartz v. Larson,* 797 S.W.2d 828, 832[6–11] (Mo. App.1990). That burden has two components: the initial burden of production, a burden, which if satisfied, shifts to the nonmoving party, and the ultimate burden of persuasion, which never shifts from the moving party. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). It is the scheme of the summary judgment rule that in a case, such as here, where the nonmoving party

---

1. The plaintiff American Family Mutual Insurance Company then added as defendants, State Farm Insurance Company and Liberty Mutual Insurance Company as potential obligors of the Turners and Cullenses under their uninsured motorist coverages should the declaratory judgment determine that Stoffers' actions were not within the American Family coverage.

2. The defendants Turner and Cullen had moved for summary judgment before discovery was

completed, and were denied. Their later separate motions for reconsideration were also denied. The subsequent order of summary judgment against the petition for declaratory judgment of the plaintiff American Family, although on the motions of defendants Middlewest Freightways, Gelco Leasing, Liberty Mutual and USF & G, is in favor of *all* the defendants, and is understood as such by all the parties.

[American Family] bears the burden of proof at trial on an essential issue, that party may not rest on its pleadings to defeat the motion for summary judgment, but must "set forth specific facts showing that there is a genuine issue for trial." Rule 74.04(e). In the absence of such a response, "summary judgment, if appropriate, shall be entered against [such party]." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)[3]; *St. Charles County v. Dardenne Realty Co.*, 771 S.W.2d 828, 830[4–6] (Mo. banc 1989); Rule 74.04(e).

The evidence on which the summary judgment adjudication rests consisted of the affidavits of the litigants, the depositions and reports of the investigating officers, and other discovery materials. There is no contention on appeal that the movants for summary judgment failed their procedural burden to identify to the trial court the particular grounds for judgment as required by Rule 74.04(b) & (c). Nor was the nonmoving party formally remiss under Rule 74.04(e), but undertook response by reference to "specific facts" from the discovery materials to show that there was a genuine issue for trial. *St. Charles County v. Dardenne Realty Co.*, 771 S.W.2d at 830[4–6].

The issue is simply whether the movant-defendants met their substantive burden to prove summary judgment under Rule 74.04 by showing that no issue of material fact

remained, and so were entitled to judgment as a matter of law. *Id.; Schwartz v. Lawson*, 797 S.W.2d 828, 832[6–11] (Mo.App. 1990). Once the movants presented to the court those components of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any" to show that there was no genuine issue of fact, they were entitled to judgment as a matter of law unless the nonmoving American Family, by affidavits or as otherwise provided in the summary judgment rule, responded to show by specific facts that a genuine issue for trial remained. Rule 74.04(c) & (e); *Celotex Corp. v. Catrett*, 477 U.S. at 323, 324, 106 S.Ct. at 2552, 2553; *St. Charles County v. Dardenne Realty Co.*, 771 S.W.2d at 830[4–6]. If that response lacks or fails, "summary judgment, if appropriate, shall be entered against [the nonmoving party]." Rule 74.04(e); *Celotex Corp. v. Catrett*, 477 U.S. at 324, 106 S.Ct. at 2553; *St. Charles County v. Dardenne Realty Co.*, 771 S.W.2d at 830[4–6].

The ground for summary judgment asserted by the movants was that under all the known evidence, identified and presented to the court on the motion, there was no genuine issue of material fact as to whether the insured Stoffers acted intentionally to cause harm to a third person within the meaning of the exclusionary clause of the insurance policy. The response by the non-movant American Family against summary judgment was that a jury could infer an

---

**3.** The way in which the burden of production and the burden of proof or persuasion shift between the parties on a motion for summary judgment under Federal Rule 56, as well as how they may be satisfied, is lucidly drawn in *Celotex Corporation v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Two other contemporaneous decisions of the United States Supreme Court, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) and *Matushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), also deal with standards for the adjudication of summary judgment. There is commentary that, "Taken together, the three cases signal to the lower courts that summary judgment can be relied upon more so than in the past to weed out frivolous lawsuits and avoid wasteful trials." C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure* § 2727 (1983). Defino v. Civic Center Corp., 780

S.W.2d 665 (1980), rendered the gist of *Celotex* and *Anderson* with acuity, but found it unnecessary to resort to those rationales to determine the summary motion question before it. We have used the authority of *Celotex* and *Anderson* in *American Bank of Princeton v. Stiles*, 731 S.W.2d 332 (Mo.App.1987), in *Jennings v. City of Kansas City, Missouri*, 812 S.W.2d 704 (Mo.App. WD 1991), and also now, as the definitive and systematic guide on the way the burdens of persuasion and production operate for summary judgment. Our conformed Rule 74.04 is now fully compatible in text with Federal Rule 56 from which it derives, but even more, both of our summary judgment procedures subserve the identical, declared and encompassing objective of our respective civil rules: "to secure the just, speedy and inexpensive determination of every action." Rule 41.02 and Fed.R.Civ.P. 1 [cited in *Celotex* 477 U.S. at 327, 106 S.Ct. at 2555].

intentional act to produce harm from that same evidence so that a genuine issue of material fact remained for trial.

It is apparent that the litigants presented to the trial court on the motion not only all the evidence that was known, but all that was knowable. The incident from which the claims of the several defendants arise was the collision, head-on, between the Stoffers vehicle and the Turner vehicle. Stoffers ran a stop sign at high rate of speed, continued north on Holmes Road, crested a hill and then suddenly veered to the left, crossed the center line into the southbound lane and into the oncoming Turner vehicle. That mid-day episode was witnessed by two officers, deputy sheriff Cook and reserve officer Burton, who saw Stoffers run through the stop sign and then gave chase until the collision. They described pursuing the vehicle at speeds of up to 80 miles per hour with emergency lights and siren operating, catching up with Stoffers after a mile, but Stoffers refusing to slow, pull over or stop.

Cook and Burton gave their statements to Kansas City police officer Sandgren who investigated the casualty, as did Turner, the other driver, and also Crystal Stifter, who gave herself as a witness. Cook and Burton also prepared their official statements for the Cass County Sheriff's Office. The investigation report by Sandgren, as well as the reported statements by Cook, Burton, Stifter and Turner, and the separate official statements of Cook and Burton were all in evidence as deposition exhibits. The deposition testimony of Cook and Burton was in evidence separately, as was the affidavit of John L. Turner, a claimant against defendant ad litem Lacy, and a defendant in the declaratory judgment action.

The movants assert that these proofs affirmatively demonstrate that there is no evidence in the record to support a declaratory judgment that the insured Stoffers acted intentionally to harm to a third party within the meaning of the policy. American Family asserts the effect of the deposition testimony of reserve officer Burton and the official statement of deputy sheriff Cook as specific facts to show that that issue remained one of material fact so as to preclude summary judgment.

American Family cites the Burton deposition testimony that when he and Cook came to within 15 feet of Stoffers, he observed Stoffers looking at them in his rear-view mirror and at the pulsating emergency headlights, but without slowing or other indication of compliance. American Family cites also the narrative by Burton of the movements of the Stoffers Datsun and of the Turner Chevrolet as they come into collision:

Q. And did you see the Chevrolet before the collision?

A. Yes.

Q. Tell me what you saw it do?

A. Well, it was headed south, we were going north. We were in pursuit of this vehicle, being the red Datsun. He made an adjustment in steering so as to align his car up with the front of the other car.

The other car, being the Chevrolet, reacted by slowing down and pulling closer to the shoulder of the road. When he did that, the driver of the Datsun made another adjustment so as to line up with the front of the vehicle, with the front of the oncoming car, and after that, the crash happened.

Q. You were able to observe the driver make those adjustments?

A. Yes.

Q. You were able to see the upper part of his body as though he was turning the steering wheel?

A. Well, he had his hands on the steering wheel and you would see him purposely, in my judgment, of course for whatever that's worth, he had an adjustment to that end, yes.

Q. You saw him do that?

A. Yes.

[Objections by counsel].

. . . . .

Q. And you saw this driver turn once in the direction of the oncoming Chevrolet?

A. Correct.

Q. And then you saw the Chevrolet take what appeared to be evasive action?

A. Correct.

Q. And you saw the driver of the Datsun realign the steering wheel so as to keep on a direct line with the Chevrolet?

A. Right.

American Family also cites Cook's statement that he saw Stoffers' automobile "going straight for the blue [Turner] vehicle at a high rate of speed" and Turner's report to the investigating officer that, although Turner attempted to pull over to avoid Stoffers, the Stoffers' car moved from its traffic lane and appeared to "take aim" at his car. The effect of these excerpts from the full evidence, American Family argues, is to raise a genuine issue of material fact so as to preclude summary judgment.

The movants argue that this evidence is not probative on the material fact in issue—the intention of the insured Stoffers to cause damage to a third party—but is rife with speculation and conclusion, and so incompetent. They argue, moreover, that this response by the nonmoving American Family does not include other evidence before the court that nullifies any probative effect otherwise attributable to the response materials. That other evidence was the deposition testimony of deputy sheriff Cook that during the chase their cars were about 20 feet apart, and he saw Stoffers look into his rear-view mirror several times, and "may have very well been looking in that mirror when he crossed the center line," after he crested the hill. Cook acknowledged that as to "what was going through that man's mind and what he actually intended to do," Cook hadn't the "slightest idea." Cook thought Stoffers was "going to the ditch", but miscalculated. Cook then repeated, "it sure looked like he lined it up and just hit that car head on," but acknowledged again, that he did not know what was going through Stoffers' mind, and never will. That other evidence also consisted of the deposition testimony of reserve officer Burton that what was actually going through Stoffers' mind

and what he was actually intending to do, if anything, at the time he crossed the center line and came into collision with the southbound Turner car, "we will never know." That other evidence was also the affidavit of defendant Turner that the statement attributed to him by the investigating officer—that the Stoffers' car appeared to "take aim" at him—was not based on any knowledge of Stoffers' specific intent or state of mind, that neither Turner nor his passenger, Cullen, ever knew, met, or heard of Stoffers, and so Turner had no reason to believe that Stoffers intended to harm them or the vehicle they occupied.

 Only evidentiary materials that are admissible or usable at trial can sustain or avoid a summary judgment. Rule 74.-04(e); *St. Charles County v. Dardenne Realty Co.,* 771 S.W.2d at 830[4–6]; *Broadway v. City of Montgomery, Alabama,* 530 F.2d 657, 661 (1976); C. Wright, A. Miller & M. Kane, Federal Practice & Procedure § 2721 (1983). The statements by officers Cook and Burton as to what Stoffers meant or intended by his movements and those of his car were opinions, conclusions and speculations neither admissible nor usable at trial, and were not probative of the material issue of fact in contention. *Smith v. Bocklitz,* 344 S.W.2d 97, 100 (Mo.1961); *Webb v. Webb,* 498 S.W.2d 757, 761 (Mo. 1973). Evidence that rests on speculation does not suffice to raise an issue of material fact. *American Bank of Princeton v. Stiles,* 731 S.W.2d 332, 339 (Mo.App.1987). The statement attributed to defendant Turner, that as he pulled his car over to the shoulder of the road Stoffers appeared to "take aim" at his car, was also without evidentiary effect, and for the same reasons. If intended as an admission, moreover, its quality of conjecture, opinion and supposition deprived it of that certainty that marks a statement of an existing fact, and hence, competent evidence. *Donnelly v. Goforth,* 284 S.W.2d 462, 465[2–4] (Mo. 1955).

In the terms of admissible evidence, fact is preferred to opinion for purposes of proof of an issue because *fact* is more

concrete than *opinion,* and so allows a more direct inference of what is to be proven than does opinion. McCormick on Evidence § 12 (3rd ed. 1984). There are some inferences, nevertheless, "so usual, natural or instinctive as to accord with general experience," although *opinion* in the usual sense, are accepted in evidence as *fact.* J. O'Brien, Missouri Law of Evidence § 9–2 (2nd ed. 1989). Thus, a lay witness may testify as to the opinion of the speed of a moving vehicle, the value of owned property, the intoxication, mental condition, and physical condition of another person[4]. Even these "opinion-facts" nevertheless may not be guesswork or speculation. *See, e.g., Cragin v. Lobbey,* 537 S.W.2d 193, 199[10] (Mo.App.1976) and *State v. English,* 575 S.W.2d 761, 763[1–3] (Mo.App. 1979).

There is another species of instances, as the dissent notes, when it is neither practicable nor possible for a witness to convey an accurate meaning or to place before the jury all the sensory impressions or separate physical conditions of the observed events in such a manner as to enable the jury to form an intelligent conclusion. In such instances, the thing described may be conveyed to the jury by a summary of the witness's impressions, although in very sense the testimony is a conclusion of the witness. The description of furniture as "nice" is one example. *Travelers Indem. Co. v. Woods,* 663 S.W.2d 392, 399[19–21] (Mo.App.1983). The description of wood as "rotten" is another example. *Whitney v. Central Paper Stock Co.,* 446 S.W.2d 415, 419[4–7] (Mo.App.1969).

The opinions and conclusions tendered as evidence by the plaintiff American Family to show that a genuine issue of the material issue of fact exists that Stoffers acted with intention to injure the defendant, however, are not of that kind. The opinions that the Stoffers "took aim" and "lined up" to hit the oncoming car head-on are neither inferences so "usual, natural and instinctive as to accord with general experience"

as to be acceptable as proof of the fact of his intention. Nor is the meaning and nature of the event that those witnesses describe—the actions of Stoffers and the movements of his car during the period observed—so difficult to convey as to require the summary opinions of the witnesses for that purpose. It is evident from their other responses, that the "took aim," "lined up" and other descriptions were not a summary of their impressions, but a conclusionary opinion of his intention.

In particular, "As to the state of mind of another, it is one thing to testify to such other's words or conduct which reveal his state of mind as to such things as motive, intent, knowledge, etc. and quite another thing to testify as to the effect of such behavior and statements on the mind of the witness to lead him to a conclusion as to the mind of the other party." 1 S. Gard, Missouri Evidence § 5:17 (1985). That conclusion is strictly for the fact-finder. It is a particularly apt rule of fair adjudication, moreover, that opinions and inferences as fact are more readily admitted at the fringe of the proof of the material issues than at the hub. McCormick on Evidence § 12 (3rd ed. 1984). The intention of the insured Stoffers to collide into and injure those in the on-coming vehicle was the only genuine fact material to the declaratory judgment action. Neither the statements of these witnesses nor any of the other evidentiary material before the trial judge on the motion for summary judgment were probative on the issue that Stoffers acted with the intention to injure.

What remains, therefore, of the American Family response to the motion for summary judgment from its evidence as divested is that at about mid-day on January 6, 1986, Stoffers went through a stop sign at a high rate of speed and continued north on Holmes Road; sheriff officers observed those infractions and gave chase behind Stoffers at speeds up to 80 miles per hour with emergency lights flashing and siren

---

**4.** *See seriatim, Shepard v. Harris,* 329 S.W.2d 1, 11[22] (Mo. banc 1959); *Schulze v. C & H Builders,* 761 S.W.2d 219, 223[5, 6] (Mo.App.1988); *State v. Todd,* 342 Mo. 601, 116 S.W.2d 113, 116[8] (1938); *Pickett v. Cooper,* 354 Mo. 910, 192 S.W.2d 412, 416[12] (1946) and *Steffen v. Southwestern Bell Tel. Co.,* 331 Mo. 574, 56 S.W.2d 47, 48[1–3] (1932).

sounding, but Stoffers did not slow, pull over or stop. In the course of the chase with the police car one length behind, the officers could see Stoffers looking in his rear-view mirror several times, then crest a hill and cross over into the southbound lane into the path of the oncoming Turner car. The officers saw Stoffers with his hands on the steering wheel move the steering wheel so that the Stoffers car moved in a direct line toward the front of the Turner vehicle, and then as the oncoming Turner vehicle moved away from the direction of the Stoffers car, the Stoffers car moved towards its front. Stoffers collided head on with Turner, and Stoffers was killed.

It is that residue of evidence from all of the known witnesses[5] that the movants tendered to the trial court as the basis for summary judgment against the American Family petition for declaratory judgment that the exclusionary clause of the Stoffers insurance policy did not cover their claims for damages. It was on that ground, that the nonmoving party—American Family— could not prove its case, that the trial court entered summary judgment in favor of the moving parties, the defendants.

The question is whether this evidence— as it happens, the coincident proof of both the movants with the burden of proof on the summary judgment motion and of the nonmovant with the burden of proof at the trial—suffices to show that there was a genuine issue of material fact to avoid summary judgment. Rule 74.04(e). In that determination, the evidence of the non-moving party is to be believed and all justifiable inferences are to be drawn in its favor. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970); *Schwartz v. Lawson,*

797 S.W.2d at 833. It is the substantive law, however, that identifies which facts are material to a claim, and thereby determines which facts are critical and which are not relevant to the summary judgment inquiry. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248, 106 S.Ct. at 2510; *Jennings v. City of Kansas City, Missouri,* 812 S.W.2d 724, 729 (Mo.App.W.D.1991).

The movants and nonmovant, however, do not agree as to the principle of substantive law that governed the declaratory judgment issue before the trial court for summary judgment. In consequence, each attributes materiality to facts from the evidence that the other discounts. The movants posit as the governing principle of substantive law: that an insured acts *intentionally* within the meaning of the exclusionary clause in the Stoffers policy when the insured specifically intends harm to another person. They argue that there was no probative evidence from which a jury could reasonably infer that Stoffers specifically intended harm, and so the evidence that American Family relies upon to prove its case at the trial presents no genuine issue of material fact. The nonmovant posits as the principle: that an insured acts *intentionally* when the probable and natural consequences of that conduct is to produce harm to another person. The nonmovant argues that there was probative evidence from which a jury could reasonably infer that the harm to the defendants was the probable and natural consequence of Stoffers' conduct, and so presented a genuine issue of material fact that prevented the entry of summary judgment.[6]

The legal effect of "an exclusion for injuries intended or expected in liability insurance policies" was the subject for deci-

---

**5.** The deposition, affidavit and documentary evidence of defendants Turner and Cullen and of officers Cook and Burton, all witnesses to phases of the chase and collision, were before the summary judgment court. There was another motorist, Crystal Stifter, who also witnessed the event, but her evidence was not before the court on the summary judgment motion.

**6.** These arguments are aptly couched in terms of the jury function. The summary judgment and direct verdict rest on the same theory, that there is no genuine issue of material fact that

needs to be resolved by the jury, so that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 250, 106 S.Ct. at 2511; *Spradlin's Market, Inc. v. Springfield Newspapers,* 398 S.W.2d 859, 866[9–13] (Mo.1966). The difference between them is only that summary judgment is before trial and on documentary evidence, while directed verdict is at trial and decided on the evidence received there. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 251, 106 S.Ct. at 2511.

sion in *American Family Mutual Insurance Co. v. Pacchetti*, 808 S.W.2d 369 (Mo. banc 1991). In *Pacchetti* the insured in his home injected or helped a boy to inject himself with cocaine, from which the boy collapsed and died. Pacchetti was covered by a homeowner's policy issued by American Family that insured against liability for personal injury for which he was legally responsible, but excluded bodily injury "which is expected or intended by any insured." The insurer brought an action for a declaratory judgment that the boy's death was within the exclusion, and so not covered by the insurance policy. The supreme court en banc reviewed the numerous decisions on the issue, considered their disparate postures of adjudication and review, and drew its rationale. It reaffirmed as the first principle that the burden is on the insurer to establish that an exclusion bars coverage. [808 S.W.2d at 371] The court determined also [in the context of the evidence] that an insurer "does not automatically bring the exclusion into play simply by showing that cocaine is harmful, or that the insured's acts in providing it to [the boy] were intentional.... *It must be shown not only that the insured intended the acts causing the injury, but that injury was intended or expected from these acts. See, Steelman v. Holford*, 765 S.W.2d 372, 377 (Mo.App.1989)." [808 S.W.2d at 371, emphasis added] "Whether the insured expected or intended injury, however, is essentially a question of fact." [808 S.W.2d at 371] When the evidence presents that question of fact, "[i]t remains for the insurer to show that this particular insured expected or intended the result which occurred." [808 S.W.2d at 371] *See also*, Restatement (Second) of Torts § 8A (1965) and Prosser & Keeton on the Law of Torts § 8 (5th ed. 1984).

*Pacchetti* authoritatively confirms, therefore, that the principle of substantive law that governed the declaratory judgment issue on motion for summary judgment was as posed by the movants and applied by the trial court. We agree that the documentary evidence before the court on motion for summary judgment shows no genuine issue as to any material fact and that the mov-

ants are entitled to judgment as a matter of law. We agree also that the evidence by American Family in response, and its inferences given full credence, does not raise a factual issue for a jury to resolve at trial: that "the insured [Stoffers] intended the acts causing the injury, [and] that injury was intended or expected from these acts." *Pacchetti*, at 371.

The evidence American Family insists upon to raise the issue of material fact that Stoffers acted intentionally to cause expected injury to Turner and the other defendants are the surmises and conclusions of witnesses Cook, Burton and some others that Stoffers *took aim, aligned, realigned, or directed* his car into the path of the oncoming Turner car. This evidence, we found, was not probative of the issue of intended conduct or intended injury. What remains is an issue of reckless behavior, a showing that does not bring the exclusion into effect. *Pacchetti, Steelman v. Holford*, 765 S.W.2d at 377[4]; *Crull v. Gleb*, 382 S.W.2d 17, 21[4–6] (Mo.App.1964). *See also*, Prosser & Keeton on the Law of Torts § 8, p. 36 (5th ed. 1984).

American Family argues nevertheless that the fact that injury was intended may be shown by circumstantial evidence, by injury that is "the natural and probable consequences of the act." American Family concludes that the genuine issue of material fact that the injury was intended was raised under the evidence by that measure of consequences, and so summary judgment was precluded. The argument cites *Truck Ins. Exch. v. Pickering*, 642 S.W.2d 113 (Mo.App.1982) and *Subscribers at the Auto. Ins. Exch. v. Kennison*, 549 S.W.2d 587 (Mo.App.1977).

The substantive law identifies *two* material facts as essential to the proof of an action by an insurer for a declaratory judgment that the acts that caused injury to another were intentional and so excluded from the liability coverage. There must be issuable proof "not only that the insured intended the *acts* causing the injury, but also that *injury* was intended or expected from these acts." *Pacchetti*, 808 S.W.2d at 371. *Intention* in this formulation "ex-

tends not only to those consequences which are desired, but also to those which the actor believes are substantially certain to follow from what the actor does." Prosser & Keeton on the Law of Torts § 8. p. 35 (5th ed. 1984); Restatement (Second) of Torts § 8A (1965); *Subscribers at the Auto. Ins. Exch.*, 549 S.W.2d at 590[3–6].

In both *Pickering* and *Subscribers* injury was the result of conduct clearly intentional, and found by the court after full evidence at the trial, as intentional. It was from the intentional quality of the act that these decisions inferred the harm as a substantially certain [and hence intentional], "natural and probable" consequence. The consequences substantially certain to follow from what the actor intentionally does suffice to prove that the harm was intended; and evidence of an express or specific intent by the actor is not essential. *Pickering* at 116[1]; *Subscribers* at 590[3–6]. In both these decisions nevertheless—as indeed in the other authorities the parties cite and *Pacchetti* treats—the facts of *both* intentional conduct and intentional injury were shown, or confirmed as essential, to prove the exclusion of the liability policy.

■ We have determined that the evidentiary materials before the court on the motion for summary judgment do not raise an issue of material fact that Stoffers either acted with intention to collide into Turner or to injure anyone. The substan-

tive law does not permit the inference of an intentional injury from a nonintentional act. Nor would such a postulation, even if logically provable and empirically proven, satisfy the rule of law that governs an intentional injury exclusion of a liability policy: that the insured intended the act that caused the injury, *and* intended or expected the injury from the act.[7] *Pacchetti*, 808 S.W.2d at 371. American Family argues also that the order of summary judgment is erroneous because it ascribed a mistaken legal definition and effect to the term *intentional act* in the exclusions provision of the policy. It is enough to say that the question on a motion for summary judgment is whether there is a genuine issue as to any material fact. We have concluded that there is none, and that the movant defendants are entitled to judgment as a matter of law. Rule 74.04(c). The evidence simply does not raise a factual question that would permit a reasonable jury to return a verdict for the nonmoving plaintiff. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 247, 106 S.Ct. at 2509. If the trial court reached a correct result of summary judgment even for incorrect reasons, we must affirm. *Labor Discount Center, Inc. v. State Bank & Trust Co. of Wellston*, 526 S.W.2d 407, 429[38] (Mo.App.1975).

The order of summary judgment is affirmed.

---

7. The litigants, movants and nonmovant, posed the summary judgment issue in terms of the facts that an insurer must show in order to meet its burden of proof as to an exclusion that bars coverage for injury expected or intended by an insured. That was the legal effect their arguments and briefs attributed to their evidence. That was legal issue that their authorities expounded, and also the legal grounding upon which the order of summary judgment rests. That is also the basis for our review. *Pacchetti* definitively addresses and authoritatively determines the two issues of fact that must be shown for an insurer to prove, *prima facie*, the operation and the denial of liability insurance coverage under such an exclusion prototype.

The exclusion in litigation, however, is not of that type. It denies coverage for injury by an intentional act of an insured *even if the actual injury or damage is different than that which was expected or intended*. In order for an act to be *intentional* for purposes of tort law as well as of exclusionary clauses in liability insurance

policies, however, the actor must desire to cause the consequences of the act, or the consequences must be substantially certain to result. *Pacchetti*; G. Couch, Cyclopedia of Insurance Law § 4992.02, p. 29 (1982); Restatement (Second) of Torts § 8A (1965); Prosser & Keeton on the Law of Torts § 8 (5th ed. 1984). The *unintended* harm from an intentional act falls within the coverage of the usual liability insurance policy, and so is not excluded by such a provision under our law. *White v. Smith*, 440 S.W.2d 497, 507[14–17] (Mo.App.1969); *Northwest Elec. Power Coop. v. Am. Motorists Ins. Co.*, 451 S.W.2d 356, 361[2, 3] (Mo.App.1970); *Fidelity & Casualty Co. v. Wrather*, 652 S.W.2d 245, 249[2, 3] (Mo.App.1983).

Our judgment affirms the determination of the trial court that there was no material issue of fact that the insured Stoffers acted intentionally so as to exclude the claims of the movants and the other defendants. Our review need go no further.

KENNEDY, J., concurs.

FENNER, J., dissents in separate dissenting opinion filed.

FENNER, Judge, dissenting.

I respectfully dissent. I believe that the evidence was sufficient to avoid summary judgment.

My disagreement with the majority is in regard to the admissibility and probative effect of Deputy Sheriff Cook's statements that "it sure looked like he [Stoffers, who was American Family's insured] lined it up and just hit that car head on," and that he saw Stoffers' car "going straight for the blue [Turner] vehicle at a high rate of speed," as well as defendant Turner's statement that although he (Turner) attempted to pull over to avoid Stoffers, the Stoffers car moved from its traffic lane and appeared to "take aim" at his car.

While generally a witness must state facts from which jurors are to form an opinion, when a witness has personally observed an event, the witness may testify to matter of fact comprehension of what the witness has seen in a descriptive manner which is actually a conclusion, opinion or inference, if the inference is common and accords with the ordinary experiences of every day life. *Travelers Indemnity Company v. Woods*, 663 S.W.2d 392, 399 (Mo. App.1983) (allowing testimony that furniture in question was "real nice furniture"); *citing State v. Morrow*, 541 S.W.2d 738, 742 (Mo.App.1976) (allowing testimony that one person "pointed" at another).

Furthermore, witnesses are permitted to express their observations in terms understandable to the average person, even though the term utilized is a summary of a condition of sensory impressions. *Travelers Indemnity Company v. Woods*, 663 S.W.2d at 399; *citing Whitney v. Central Paper Stock Company*, 446 S.W.2d 415, 419 (Mo.App.1969) (holding that testimony that wood was "rotten" should have been allowed). The test for allowing such testimony being that "when it is impossible or extremely difficult for a witness to convey an accurate and actual meaning, and the nature of the thing described may be more clearly and practically conveyed to the jury by a summary of the witness's impressions, or by comparison with some ordinary object or condition familiar to the court or jury, then the practical administration of justice requires acceptance of the testimony even though it may be, in a sense, the conclusion of the witness." *Travelers Indemnity Company v. Woods*, 663 S.W.2d at 399; *citing Whitney v. Central Paper Stock Company*, 446 S.W.2d at 419; *also citing State v. French*, 476 S.W.2d 509, 512 (Mo.1972) (allowing a description of clothes as "flashy"); *See also Brown v. Kroger Company*, 358 S.W.2d 429 (Mo.App.1962) (allowing testimony that a carton of Pepsi "was discolored like it had been wet").

The statement by defendant Turner that although he attempted to pull over to avoid Stoffers, the Stoffers car moved from its traffic lane and appeared to "take aim," as well as the statements by Deputy Sheriff Cook that the Stoffers' car was "going straight for the blue [Turner] vehicle at a high rate of speed," and that "it sure looked like he [Stoffers] lined it up and just hit that car head on," clearly and practically convey to the jury the witness's impressions of the movement of the Stoffers car. The above statements convey the witnesses' impressions in terms understandable to the average person, where it was otherwise difficult for the witness to convey the accurate and actual meaning in order to put the finder of fact in the witness's place. A witness's testimony should not be so limited to a recitation of pure facts to such an extent that the finder of fact is precluded from being able to receive the witness's true observation to enable the fact finder to be able to equally well draw the inference of the witness. *See Brown v. Kroger Company*, 358 S.W.2d at 95.

I believe that the testimony of Deputy Sheriff Cook and defendant Turner, as previously set forth, was admissible. In my opinion, this testimony, together with the testimony of Officer Burton describing the movements of the Stoffers car, presents a

genuine issue of whether or not Stoffers acted intentionally.[1]

I would reverse the decision of the trial court granting summary judgment.

1. As recited in the majority opinion, Officer Burton testified as follows in regard to his observation of the movement of the Stoffers car:
Q. And did you see the Chevrolet [Turner vehicle] before the collision?
A. Yes.
Q. Tell me what you saw it do.
A. Well, it was headed south, we were going north. We were in pursuit of this vehicle, being the red Datsun [Stoffers vehicle]. He [Stoffers] made an adjustment in steering so as to align his car up with the front of the other car. The other car, being the Chevrolet, reacted by slowing down and pulling closer to the shoulder of the road. When he did that, the driver of the Datsun made another adjustment so as to line up with the front of the vehicle, with the front of the oncoming car, and after that, the crash happened.
Q. You were able to observe the driver [Stoffers] make those adjustments?
A. Yes.

. . . . .

Q. And you saw this driver turn once in the direction of the oncoming Chevrolet?
A. Correct.
Q. And then you saw the Chevrolet take what appeared to be evasive action?
A. Correct.
Q. Any (sic) you saw the driver of the Datsun realign the steering wheel so as to keep on a direct line with the Chevrolet?
A. Right.